**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff Hanscom*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LISABETH HANSCOM, on behalf of herself and those similarly situated, | Case No.: 4:21-cv-03434-JSW |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | Hon. Jeffrey S. White |
| REYNOLDS CONSUMER PRODUCTS INC. and REYNOLDS CONSUMER PRODUCTS LLC, | DATE: August 13, 2021<br>TIME: 9:00 a.m.<br>CTRM: 5 |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

**SUMMARY OF ARGUMENT** ..................................................................... iv

**SUMMARY OF THE ALLEGATIONS** ..................................................................1

**ARGUMENT** ..................................................................................................2

      I.     Plaintiff Has Plausibly Alleged Deceptive Practices. ...............................................2

             A.    Calling the Products "Recycling" Bags Misleads Reasonable Consumers. 2

             B.    Plaintiff Has Plausibly Alleged Claims Based on Hefty's Concealment. ...5

             C.    Hefty's Website Claims Show How It Intended Consumers To Interpret Its Packaging. ...................................................................................9

      II.    Plaintiff Has Plausibly Alleged Violations of the UCL's "Unlawful" Prong..........9

      III.   Plaintiff Has Plausibly Alleged Violations of the UCL's "Unfair" Prong. ...........12

      IV.   Plaintiff Is Entitled to Equitable Relief..................................................14

**CONCLUSION** ...........................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. Cole Haan*, LLC, No. SACV 20-913 JVS (DFMx), 2020 U.S. Dist. LEXIS 176002 (C.D. Cal. Sept. 3, 2020) ............................................................. 15

*Barrett v. Apple Inc.*, No. 5:20-cv-04812-EJD, 2021 U.S. Dist. LEXIS 41012 (N.D. Cal. Mar. 4, 2021) ..................................................................................... 9

*Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019*)* ........................ 3

*Boris v. Wal-mart Stores, Inc.*, 35 F. Supp. 3d 1163 (C.D. Cal. 2014) ........................ 4

*Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507 (N.D. Cal. Jan. 4, 2021) ........................................................................................... 3

*C.W. Epic Games, Inc.*, No. 19-3629, 2020 WL 5257525 (N.D. Cal. Sept. 3, 2020) ............... 7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548 (1999) ................ 12

*Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020) ..................... 3

*Clark v. Am. Honda Motor Co.*, No. CV 20-03147 AB (MRWx), 2021 U.S. Dist. LEXIS 64520 (C.D. Cal. Mar. 25, 2021) ........................................................... 15

*Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588 (Ct. App. 2011) ......................... 5, 8

*Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Ct. App. 2006) ...................... 5

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017) ............................. 3

*Doe v. Successfulmatch.com*, 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ............................ 9

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) .............................. 15

*Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46 (2010) ......................... 12

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ....................................... 5

*Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar. 29, 2021) ..................................................................... 14

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111 (N.D. Cal. 2018) ........... 3

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ....................................... 2

*Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017) .................................... 10

*Gudgel v. Clorox Co.*, No. 20-cv-05712-PJH, 2021 U.S. Dist. LEXIS 11580 (N.D. Cal. Jan. 21, 2021) ....................................................................... 4

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................... 2

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) .............................. 5, 6, 12

*Huynh v. Quora, Inc.*, No. 5:18-cv-07597-BLF, 2020 U.S. Dist. LEXIS 241021 (N.D. Cal. Dec. 21, 2020) ..................................................................... 15

*In Gibson v. Jaguar Land Rover N. Am. LLC,* No. 20-769, 2020 U.S. Dist. LEXIS 168724 (C.D. Cal. Sept. 9, 2020) ........................................................... 15

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) .............................. 9

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2020 U.S. Dist. LEXIS 197766, 2020 WL 6271173 (N.D. Cal. Oct. 23, 2020). 14, 15

*In re Macbook Keyboard Litig.,* No. 5:18-cv-02813-EJD, 2020 U.S. Dist. LEXIS 190508 (N.D. Cal. Oct. 13, 2020) ........................................................... 15

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)........................................................................6

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293 (2012)....................................................9

*Knowles v. Arris Int'l PLC*, 847 F. App'x 512 (9th Cir. 2021) ...............................................7

*LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (1997) ...............................................................5, 8

*McCrary v. Elations Co.*, No. 13-242, 2013 WL 6403073 (C.D. Cal. July 12, 2013) ...............9

*McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227 (2006) .......................................................14

*Minor v. Baker Mills, Inc.*, No. 3:20-cv-02901-RS (N.D. Cal. May 20, 2021)........................14

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ............................................5

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14-cv-02006-JST, 2015 U.S. Dist. LEXIS 14674 (N.D. Cal. Feb. 5, 2015) .............................................................9

*Prescott v. Nestle USA, Inc.*, No. 19-cv-07471-BLF, 2020 U.S. Dist. LEXIS 99261 (N.D. Cal. June 4, 2020) ...........................................................................................................4

*Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) .................................................................................................4

*Rovai v. Select Portfolio Servicing, LLC*, No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764 (S.D. Cal. June 27, 2018)....................................................................14

*Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 U.S. Dist. LEXIS 108657 (N.D. Cal. Aug. 15, 2016).................................................................................6

*Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411 (2015) ...........................................6

*Shaeffer v. Califia Farms*, LLC, 44 Cal. App. 5th 1125 (2020) ...........................................12

*Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212 (C.D. Cal. 2012)..................................8, 9

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)........................................iv, 5

*Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) ...............................................9

*Younan v. Equifax Inc.*, 111 Cal. App. 3d 498 (1980)..............................................................8

**STATUTES**

16 C.F.R. § 260.12 ............................................................................................................iv, 10, 12

16 C.F.R. § 260.12(a)....................................................................................................................10

16 C.F.R. § 260.12(b)....................................................................................................................10

16 C.F.R. § 260.2 ..........................................................................................................................10

Cal. Bus. and Prof. Code § 17500 ...............................................................................................10

Cal. Pub. Res. Code § 42355 .........................................................................................10, 11, 13

Cal. Pub. Res. Code § 42355.5 ....................................................................................................10

**RULES**

Fed. R. Civ. Proc. 8(d)(2) ............................................................................................................14

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS; CASE NO. 4:21-CV-03434-JSW

## SUMMARY OF ARGUMENT

Reynolds Consumer Products Inc. and Reynolds Consumer Products LLC (collectively, "Hefty") sell trash bags under the "Hefty" trademark as "Recycling" bags (the "Products"). Plaintiff alleges that consumers believe that the Products are (1) suitable for disposing of recyclable waste and (2) are recyclable. Hefty's motion to dismiss primarily focuses on the latter theory but does not dispute that the Products contaminate the recyclable waste stream, decrease the recyclability of recyclable items, and are unusable for curbside recycling in 99.9% of communities where they are sold.

Hefty's arguments for dismissal are unfounded and should be denied:

1.      First, Hefty represents that the Products are "Recycling" bags even though the Products are classified as a contaminant by nearly every municipal recycling program ("MRP") in California, making them unsuitable for recycling. Second, at a minimum, Hefty implies that the Products are recyclable because consumers understand that only recyclable products should be placed in a recycling bin. The "Blue Bag" programs that Hefty cite serve only approximately 40,000 Californians (0.1%) in remote localities, thus a significant portion of reasonable consumers are misled by Hefty's claims. Safier Decl. ¶¶ 1-5. Hefty's inconspicuous and vague disclosure on the back panel that the Products are appropriate for use in "[MRPs] Where Available" does not cure its misrepresentation because the language suggests that the Products are appropriate for use wherever [MRPs] are available, which is untrue. In any case, per *Williams v. Gerber Products Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008), consumers are not required to fact check the claims on the front of a product.

2.      Plaintiff has plausibly alleged a fraud by omission claim because Hefty affirmatively represents that the Products are "Recycling" bags suitable for "For All Your Recycling Needs" but omits material information that contradicts those representations.

3.      Plaintiff has, *inter alia*, adequately alleged an unlawful violation pursuant to 16 C.F.R. § 260.12, which applies to both direct and implied recycling claims.

4.      Plaintiff plausibly alleges a UCL unfairness claim because there is a "close nexus" between the challenged act and the public policy against false environmental claims.

5.      *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) does not foreclose Plaintiff from pleading equitable claims in the alternative to her legal claims.

## SUMMARY OF THE ALLEGATIONS

Throughout the class period, Hefty has uniformly marketed the Products as "Hefty Recycling" bags. Compl. ¶ 17. The back of the label states that "Hefty Recycling Bags are Perfect For All Your Recycling Needs" and are "Designed to Handle All Types of Recyclables." *Id.* ¶ 18. Reasonable consumers understand this to mean that the Products (1) are suitable for disposing of recyclable waste and (2) are, in fact, recyclable. *Id.* ¶ 3. In truth, the Products contaminate the recyclable waste stream, decrease the recyclability of otherwise recyclable materials, and are not recyclable. *Id.* ¶¶ 3, 26-27.

Hefty intends for consumers to believe that the Products are suitable for ordinary curbside recycling service and are recyclable. *See id.* ¶ 37. This is evidenced by Hefty's website, which explains that the Products are "[d]esigned to handle your heaviest recycling jobs" and that "these transparent bags make it easy to sort your recyclables and avoid the landfill." *Id.* ¶¶ 3, 20. Hefty's advertising on its website (and other websites such as Amazon.com) also show the Products being placed in recycling bins, which conveys that the Products are fit for disposing of recyclable waste and are recyclable. *Id.* ¶¶ 21-22.

On September 15, 2020, Plaintiff purchased a box of the Products. *Id.* ¶ 40. She read the claim "Recycling" bags on the Product and purchased it because she believed that the bags were suitable for disposing of her recyclables and that the bags themselves were recyclable. *Id.* Had Plaintiff known that the Products were not suitable for recycling and were not recyclable, she would not have purchased them. *Id.* Plaintiff continues to desire to purchase trash bags that are suitable for recycling plastic waste and are recyclable from Hefty. *Id.* ¶ 41. However, Plaintiff is unable to determine if the Products are recyclable. *Id.* As long as Hefty may use the phrase "Recycling" bags to describe products that are unsuitable for recycling and are not recyclable, then when presented with Hefty's packaging, Plaintiff continues to have no way of determining whether the representation "Recycling" on the bags is in fact true. *Id.*

Plaintiff sued to stop Hefty's deceptive practices and alleges six causes of action: (1) violation of the California Consumers Legal Remedies Act ("CLRA") (*id.* ¶¶ 52-60); (2) violation of the False Advertising Law ("FAL") (*id.* ¶¶ 61-71); (3) fraud, deceit, and/or misrepresentation (*id.* ¶¶ 72-80); (4) negligent misrepresentation (*id.* ¶¶ 81-88); (5) violation of the Environmental Marketing Claims Act ("EMCA") (*id* ¶¶ 89-93); and (6) violation of the Unfair Competition Law ("UCL") (*id.* ¶¶ 94-102).

1

## ARGUMENT

2

### I.    Plaintiff Has Plausibly Alleged Deceptive Practices.

3

#### A.  Calling the Products "Recycling" Bags Misleads Reasonable Consumers.

4

"Whether a reasonable consumer would be deceived by a product label is generally a question of

5

fact not amenable to determination on a motion to dismiss," although "in rare situations a court may

6

determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not

7

plausible." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (*citing Freeman*

8

*v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). This is not one of those "rare circumstances."

9

Plaintiff advances two theories of affirmative deception: the Products are not "Recycling" bags

10

because they are (1) unsuitable for disposing of recyclable waste, and (2) are unrecyclable. Compl. ¶¶ 3,

11

25-29, 34, 40, 63, 73, 82, 95. Plaintiff also alleges that Hefty conceals the truth about the Products—that

12

the bags contaminate the recyclable waste stream, decrease the recyclability of otherwise recyclable

13

materials, and are not recyclable because they are made from low-density polyethylene plastic ("LDPE" or

14

"No. 4 plastic")—from consumers. *Id.* ¶¶ 3, 25, 34, 63, 73, 82, 95.

15

Here, Plaintiff's deception claims are plausible. First, consumers, such as Plaintiff, saw the claim

16

"Recycling" on the front of the Product and Hefty's explanation on the back of the label that "Hefty

17

Recycling Bags are Perfect For All Your Recycling Needs" and are "Designed to Handle All Types of

18

Recyclables" and reasonably understood that the Products are usable for "Recycling." *Id.* ¶¶ 3, 17-19, 40.

19

However, the Products are not suitable for recycling because 99.9% of recycling programs in California

20

classify the Products as a contaminant because they clog up recycling equipment and reduce the value of

21

otherwise recyclable plastics, making them unsuitable for disposing of recyclable waste. *Id.* ¶¶ 4, 24-28.

22

Consumers also reasonably understand Hefty's representations to mean that the Products themselves are

23

recyclable because only recyclable items may be placed in a recycling bin. *Id.* ¶¶ 3, 22. Not coincidentally,

24

this is exactly what Hefty intends consumers to understand. The language "[d]esigned" for recyclables on

25

the Product label implies that the bags are specially made for recycling. Hefty's website further confirms

26

its intent with statements such as "designed to handle your heaviest recycling jobs" and "these transparent

27

bags make it easy to sort your recyclables and avoid the landfill" and images and videos of the bags being

28

placed in a recycling bin. *See id.* ¶¶ 3, 20-22. Courts have routinely found similar allegations sufficient to

plead an actionable misrepresentation. *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017) (holding that reasonable consumers would be deceived by a product labeled "flushable" that was not actually suitable for flushing down a toilet); *Bush v. Rust-Oleum Corp.,* No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507, at *14 (N.D. Cal. Jan. 4, 2021) (finding that a significant portion of reasonable consumers would interpret the claims "non-toxic" and "earth friendly" to mean that the products "do not pose any risk of harm to humans, animals, and/or the environment."); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111, 1118 (N.D. Cal. 2018) (holding there was a genuine issue of material fact as to whether the Hefty's "Made From Real Ginger" claim implied that the Product contained ginger root).

Hefty's primary defense is that it did not expressly state that the "Recycling" bags are "recyclable" and that Plaintiff's "mistaken belief" is insufficient to state a claim" under California's law. ECF 18 at 11. Hefty primarily relies on *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1227 (9th Cir. 2019*)* and similar authority. However, these cases are inapposite. First, *Becerra,* involved use of the word "Diet" on a soft drink. *Id.* The plaintiff argued that the term "Diet" conveyed that the product would help with losing weight. *Id*. At the time *Becerra* was filed the lawsuit, diet drinks had been sold in the United States for decades and the term diet was well-understood to mean a zero-calorie drink. *Id*. at 1227-29. The court held that "[i]n context, the use of 'diet' in a soft drink's brand name is understood as a relative claim about the calorie content of that soft drink compared to the same brand's 'regular' (full-caloric) option." *Id*. at 1229. Unlike in *Becerra*, there is no similar clear understanding by the public that "Recycling" bags are an unrecyclable contaminate, unusable for ordinary curbside recycling. Further, contrary to here, the *Becerra* plaintiff could not identify any advertising showing that the defendant had attempted to mislead the public. *Id.* at 1230.

Hefty next cites *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 12 (N.D. Cal. 2020) involving a product called "Premium Baking Classic White Chips." *Id.* The plaintiff argued that this language led consumers to believe that the product was made from white chocolate. *Id.* Nothing on the product stated the word "chocolate." *Id.* In both *Becerra* and *Cheslow*, the courts looked at the dictionary definitions of the terms at the heart of the cases to determine whether the plaintiffs' theory of deception was plausible. 945 F.3d at 1229; 445 F. Supp. at 17. In *Cheslow*, the court found that there was nothing in

the word "white" that could imply "chocolate." *Id.* Here the term "Recycling" is used to contrast the Products with ordinary trash bags. In other words, as opposed to other trash bags, the Products are bags for "Recycling." The term recycling means "the action or process of converting waste into reusable material" or "waste material set aside to be recycled."[1] Therefore, "Recycling" bags are bags that are for use in "the action or process of converting waste into reusable material" or they are bags for disposing of "waste material set aside to be recycled." In either case, the bags do not perform as advertised.[2] To the contrary, they actually impede (or are bad for) the very thing they tout.

Hefty's argument that the word Recycling before a noun does not necessarily mean it is recyclable—e.g., "recycling truck"—even if partially true, is irrelevant. Hefty cites *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 164461, at *9 (C.D. Cal. Oct. 25, 2012) to reinforce this point stating that it should not be held liable because Plaintiff "assume[s] things about the Products other than what the statement[s] actually say[]." ECF No. 18 at 13. However, the difference here is that a bag designed for recycling, is designed to be placed in a recycling bin with other recyclables. Here, it is perfectly reasonable for a consumer to believe that if the Product is designed to be placed in a recycling bin to be processed with other recyclables, it too is recyclable.

Next, Hefty argues that the claim that the Product is a "Recycling" bag is not deceptive because certain cities require blue bags for recycling. But that misses the mark. Hefty has identified only three communities that use blue bags for recycling, which represents 0.1% of communities in California. Safier Decl. ¶¶ 1-5. Indeed, of the three communities Hefty identifies, two state that they provide recycling bags directly to residents. ECF Nos. 19-1 at 3, 19-2 at 2. It strains credulity that Hefty is selling millions of

---

[1] *Recycling*, <u>Google Dictionary by Oxford Languages</u>, <u>https://www.google.com/search?q=define+recycling</u> (last visited July 6, 2021).
[2] Hefty's other cited authority is also inapposite. In *Gudgel v. Clorox Co.*, No. 20-cv-05712-PJH, 2021 U.S. Dist. LEXIS 11580, at *2 (N.D. Cal. Jan. 21, 2021), the plaintiff alleged that the product labeled as "Splash-less Bleach" should be usable as a disinfectant. *Id.* In that case, the product was bleach as advertised and there was no representation that the product could be used for disinfecting. Here, in contrast, the Product is neither fit for recycling nor is it recyclable as advertised. The facts in *Prescott v. Nestle USA, Inc.*, No. 19-cv-07471-BLF, 2020 U.S. Dist. LEXIS 99261, at *9 (N.D. Cal. June 4, 2020) are identical to *Cheslow* and it is inapposite for the same reason. Finally, Hefty's use of ellipsis masks the fact the fact that *Boris v. Wal-mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1170 (C.D. Cal. 2014) was a much more limited ruling than Hefty represents. The complete quote states: "A merchant's liability cannot be premised solely on a consumer's assumptions about a product based on a product's price and the color of its packaging." *Id.* Plaintiff's allegations are not based on the Product's price or color.

plastic bags throughout California for use in the "Blue Bag" programs that are used in a small handful of isolated towns, particularly when those residents already receive the bags that they need directly from their waste management company. In any event, the reasonable consumer only "requires a probability 'that a **significant portion** . . . of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)) (emphasis added). Here, 99.9% of consumers is significant.

Finally, Hefty argues that when viewed in context, its claim that the Products are "Recycling" bags is not misleading. However, that is false. Here, Hefty has made a clear representation on the front of the Product that the Products are fit for recycling. Hefty's ambiguous disclaimer that the Products are "Developed For Use in Municipal Recycling Programs Where Applicable" does not cure this misrepresentation. This vague disclaimer, even when viewed in context, is not elucidating. The language can be interpreted to mean that the bags are designed for municipal programs where applicable—i.e. wherever curbside municipal service is available, which is false. Further, the Ninth Circuit has repeatedly held that a plaintiff is not required to cross-check the representations on the front of the label with those made on the back. *See Williams*, 552 F.3d at 939-40 (A "reasonable consumer" is not "expected to look beyond misleading representations on the front of the box.").

### B.  Plaintiff Has Plausibly Alleged Claims Based on Hefty's Concealment.

"[T]o be actionable [an] omission must be contrary to a representation actually made by the defendant, **_or_** an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006) (emphasis added). An obligation to disclose arises when "the omission was material," the omission relates to a fact that is "central to the product's function," and "one of the four *LiMandri* factors" applies. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (citing *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593-95 (Ct. App. 2011)).[3] Plaintiff has adequately pled an actionable omission based on this standard.

---

[3] The *LiMandri* factors provide that an omission is actionable fraud in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins*, 134 Cal. Rptr. 3d at 593 (citing *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (1997)).

First, Plaintiff has pleaded that the Hefty's omission was contrary to a representation it actually made. *See* Compl. ¶¶ 63-64, 73-74, 76, 82, 95. This alone is sufficient to plead an actionable omission. Hefty affirmatively states that the bags are "Recycling" bags. Compl. ¶ 3. However, contrary to that assertion, Hefty fails to disclose that the Products "contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable," making them unfit for recycling as represented. *Id*. Further, Hefty's representations on its website, including pictures of the Products being disposed of in recycling bins for curbside pickup are further affirmative representations that directly contradict its omissions. Pursuant to *Daugherty*, this is sufficient for Plaintiff to plausibly allege concealment. *See, e.g., Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 U.S. Dist. LEXIS 108657, at *21 (N.D. Cal. Aug. 15, 2016) (denying motion to dismiss with regard to omissions based on contrary representation when the defendant prominently stated a thread count but failed to disclose that actual thread counts were contrary to their representations); *Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411, 421 (2015) (defendant's press releases and advertising stating that its laptops fall within defendant's tradition of "reliable, manageable, stable, secure and expandable products" were sufficiently contradictory to create a triable issue of fact as to whether it had a duty to disclose that its screens were defective).

In addition to being directly contrary to a representation that Hefty affirmatively made, Plaintiff's concealment cause of action can also be maintained based on Hefty's duty to disclose the information about the recyclability of the Products. Hefty does not dispute that the omitted information was material.[4] However, it argues that the omission was not "central to the product's function" as required by *Hodsdon*. 891 F.3d at 863. That is patently absurd. Here, the Product's principal purpose is to be used as a "Recycling" bag and to dispose of recyclable waste. That is how Hefty advertised the Products to distinguish them from regular trash bags and how it intends for consumers to use the Products. Hefty intentionally omits information regarding a flaw in the Products that make them all but useless for their

---

[4] "A misrepresentation is judged to be "material" if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). Plaintiff meets this standard.

1    primary advertised purpose.

2         Hefty's quotation of *Hodsdon* as holding that a purported flaw must make a product "incapable of

3    use by any consumer" in order to be "central to [its] function" is misleading. ECF No. 18 at 15. *Hodsdon*

4    concerned whether Mars was required to disclose that its chocolate bars were sourced from chocolate that

5    was made using forced labor. 891 F.3d at 860. The type of labor used to make the product was irrelevant

6    to the product's central function because a chocolate bar is designed to be eaten. *See id.* at 862. The court

7    applied the ordinary standard and stated that a flaw that renders a product useless would be central to its

8    function in contrast to a flaw regarding how chocolate is made, which does not affect its usability at all.

9    *Id.* There are few if any defects that render a product completely useless. Indeed, the court in *Hodsdon*

10   used an example of a broken screen on a laptop as an example of a defect that is central to the function of

11   a product. *Id.* Hefty's proposed standard that a defect must render the product completely useless would

12   be contrary to this example. *Id.* A sufficiently tech savvy computer user could use a broken laptop as an

13   external hard drive, a server, or for spare parts. Here, Hefty argues that because a consumer could still use

14   its "Recycling" bags in rare instances, its omissions are not central to its function. That is false. Hefty's

15   omissions that the Products cannot be used in 99.9% of curbside recycling programs are central to its

16   advertised function.[5]

17        Hefty's argument that Plaintiff has a subjective preference that her recycling bag be recyclable is

18   nonsense. Hefty sells the product as having the attributes necessary for recycling. It is not Plaintiff's

19   subjective preference that the Product be recyclable. Rather it is essential to the Product's function as a

20   "Recycling" bag. Hefty's argument that there is some minority of consumers that are unconcerned with

21   whether "Recycling" bag are suitable for recycling is purely speculative. This is in contrast to *C.W. Epic

22   Games, Inc.*, No. 19-3629, 2020 WL 5257525, at *5 (N.D. Cal. Sept. 3, 2020), which Hefty cites to

23   reinforce its point finding that omissions regarding the availability of refunds did not relate to the

24   product's "central functionality" because it was a "socially connected video game on the internet"—in

25

26   _____

     [5] This reasoning is also consistent with *Rutledge* cited by Hefty which noted a duty to disclose a material

     defect that caused laptop computers to fail even though the laptop could still be used with an external

27   monitor. 238 Cal. App. 4th at 1175. Further, consistent with *Knowles v. Arris Int'l PLC*, 847 F. App'x

     512, 514 n.1 (9th Cir. 2021), Plaintiff's alleged omissions do not simply affect the central function of the

28   Products in some minor way, rather, the omissions render the Products useless for recycling in 99.9% of

     places where they are sold.

1   other words the omission had nothing to do with the function of the game at all.

2       Next, Hefty argues that, even if its omissions are central to the Product's function, none of the four

3   *LiMandri* factors are applicable and, therefore, it had no duty to disclose that the Products are an

4   unrecyclable contaminant. Plaintiff does not allege that the first two factors are applicable but she has

5   plausibly pled the remaining two factors.

6       First, Plaintiff has plausibly alleged that Hefty actively concealed that the Products are not fit for

7   recycling to "capitalize on consumer demand for 'green' products." *See, e.g.*, Comp. ¶ 37. Plaintiff further

8   alleges that Hefty failed to disclose anywhere to consumers that the Products are made from LDPE plastic.

9   *Id.* ¶ 34. This amounts to more than a mere non-disclosure because Hefty is aware that the Products are

10   almost universally banned by MRPs but has engaged in a scheme to defraud the public by making these

11   Products available throughout California, knowing that consumers are improperly buying the product for

12   their curbside recycling programs. *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 512 (1980) (holding that

13   there was an actionable representation where the defendant concealed information as part of a scheme to

14   deprive plaintiff of his insurance benefits); *see also Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212,

15   1221 (C.D. Cal. 2012) (plaintiff had adequately pleaded "fraudulent concealment" by alleging that the

16   defendant "concealed the information in order to increase its sales from consumers.").

17       Second, Hefty made "partial representations" that are "misleading because some other material

18   fact has not been disclosed." *Collins*, 134 Cal. Rptr. 3d at 593 (citing *LiMandri*, 60 Cal. Rptr. 2d at 543).

19   Hefty mounts no credible argument to discount Plaintiff's allegations. Instead, it argues that marketing the

20   Products as "Recycling" bags "does not amount to a representation about their recyclability at all." This

21   argument is conclusory. Stating that the products are "Recycling" bags with an additional disclosure that

22   the Products are "Perfect For All Your Recycling Needs" is a partial representation. Reasonable

23   consumers understand these claims to mean exactly what they say—that Products are suitable for

24   recycling recyclable waste. Plaintiff has pleaded that she relied on these omissions in making her

25   purchases and that had she "been adequately informed and not intentionally deceived by Defendants, [she]

26   would have acted differently by, without limitation, refraining from purchasing the Products or paying less

27   for them." Compl. ¶ 63; *see also* ¶¶ 71, 93, 102. This is consistent with *Sud v. Costco Wholesale Corp*,

28   229 F. Supp. 1075, 1085 (N.D. Cal. 2017) (White J.), because Plaintiff has pled that, absent disclosure of

the full facts, i.e. that the Products are classified as a contaminant and can lead to otherwise recyclable materials being thrown in the trash, the representations are misleading. *See also, e.g.*, *Doe v. Successfulmatch.com*, 70 F. Supp. 3d 1066, 1077 (N.D. Cal. 2014) (finding duty to disclose where defendant made a partial representation stating that plaintiff's profile *may* be shared with other sites when its practice was *always* to share user profiles).[6]

### C. Hefty's Website Claims Show How It Intended Consumers To Interpret Its Packaging.

Hefty argues that Plaintiff cannot state any claims based on its website and advertising campaigns because Plaintiff did not allege that she saw them, including statements such as "designed to handle your heaviest recycling jobs" and "these transparent bags make it easy to sort your recyclables and avoid the landfill" and advertisements showing the bags are appropriate for putting in the recycling bin with other recyclable waste. Compl. ¶¶ 3, 20-22. However, Hefty misunderstands the purpose of those allegations in the Complaint. Plaintiff's allegations relating to Hefty's website and online advertising highlight its *intent* and sustained efforts to deceive consumers. The allegations concerning Hefty's other marketing practices are consistent with and support Plaintiff's allegations regarding how reasonable consumers interpret the claims that the Products are "Recycling" bags. *See, e.g.*, *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14-cv-02006-JST, 2015 U.S. Dist. LEXIS 14674, at *34-35 (N.D. Cal. Feb. 5, 2015) (holding that though the plaintiff did not allege that he personally relied on the defendant's website and advertising materials, they were still relevant).[7]

## II. Plaintiff Has Plausibly Alleged Violations of the UCL's "Unlawful" Prong.

Section 17200's "unlawful" prong "borrows violations of other laws and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326-27 (2012)

---

[6] Contrary to what Hefty asserts, there is no authority stating that Plaintiff cannot base a concealment action on the FAL. ECF No. 18 at 14, n.1. *Stanwood v. Mary Kay Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D. Cal. 2012) expressly states that an omission theory based on a "partial representation[]" under the FAL would be acceptable. Similarly, *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993 (N.D. Cal. 2015) states that an omission, "standing alone, does not support a claim of negligent misrepresentation" but that does not preclude a negligent concealment based on contrary or partial representations.

[7] *Barrett v. Apple Inc.*, No. 5:20-cv-04812-EJD, 2021 U.S. Dist. LEXIS 41012, at *34 (N.D. Cal. Mar. 4, 2021) is inapposite because it did not concern website allegations that were relevant to show intent. This is also true of *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) and *McCrary v. Elations Co.*, No. 13-242, 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013).

1    (internal quotation marks and ellipsis omitted). "Virtually any law or regulation—federal or state,

2    statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Id.* (internal

3    quotation marks and ellipsis omitted); *see also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir.

4    2017) (same). Plaintiff alleges that Hefty's practices violate several statutory and regulatory provisions

5    (*see, e.g.*, Compl. ¶¶ 31-36, 95), and therefore she has adequately stated a claim under the unlawful prong

6    of the UCL. More specifically, Plaintiff has alleged that Hefty's practice of labeling the Products as

7    "Recycling" bags violates the CLRA; the FAL; the EMCA; the Green Guides, including 16 C.F.R. §§

8    260.2, 260.12(a), and 260.12(b); and Cal. Pub. Res. Code §§ 42355 and 42355.5.

9        Hefty argues that it has not violated any law because it markets the Products as "Recycling" bags

10   which "falls outside the ambit of the Green Guides and California's environmental marketing statutes."

11   ECF No. 18 at 10. Not so. Cal. Pub. Res. Code § 42355.5 applies to *all* environmental marketing claims

12   regardless of whether they use the term "recyclable" and states that it is "the public policy of the state that

13   environmental marketing claims, ***whether explicit or implied***, should be substantiated by competent and

14   reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic

15   products." (emphasis added.) Hefty does not expressly discuss § 42355.5 or refute that it cannot

16   substantiate its claim that the Products are recycling bags fit for disposing of recyclable waste or its

17   implied claim that the bags are recyclable.[8]

18       Hefty also misrepresents the scope of the Green Guides, which does not merely prohibit the use of

19   the word "recyclable" on products as it argues:

20       It is deceptive to misrepresent, ***directly or by implication***, that a product or package is
         recyclable. A product or package should not be marketed as recyclable unless it can be
21       collected, separated, or otherwise recovered from the waste stream through an established
         recycling program for reuse or use in manufacturing or assembling another item.
22

23   16 C.F.R. § 260.12(a). The term "Recycling" directly suggests that the Product is recyclable because a

_____

24   [8] *See also* § 17580(a) ("Any person who represents . . . on the label . . . of a consumer good that the
     consumer good . . . is not harmful to, or is beneficial to, the natural environment, through the use of such
25   terms as "environmental choice," "ecologically friendly," "earth friendly," "environmentally friendly,"
     "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe,"
26   "environmentally lite," "green product," ***or any other like term***, shall maintain in written form in its
     records the following information and documentation supporting the validity of the representation")
27   (emphasis added); 16 C.F.R. § 260.2 ("To determine if an advertisement is deceptive, marketers must
     identify all ***express and implied*** claims that the advertisement reasonably conveys. Marketers must
28   ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a
     reasonable basis before they make the claims.") (emphasis added).

1   recycling bag must be suitable for disposal in a recycling bin to avoid contaminating the waste stream.

2   Also, the word recycling can be used as a noun to mean something that is recyclable.

3   Hefty argues that the court should apply *Hill v. Roll Internat. Corp.,* 195 Cal. App. 4th 1295, 1296

4   (2011) but that case is plainly inapposite. That case concerned the use of a "Green Drop" seal on Fiji

5   bottled water with no additional language. *Id.* at 1298. The plaintiff pled that the symbol falsely conveyed

6   the products had a third-party seal of approval. *Id.* Here, there are clear affirmative misrepresentations on

7   the label including the use of the word "Recycling" on the front of the Product and advertising touting that

8   the Products are "[d]esigned" for a particular use.

9   Hefty also fixates on subsection (d) of Cal Pub. Res. Code § 42355 and argues that it applies only

10  to the claim "degradable," biodegradable," and "decomposable." However, that is only one subsection of

11  the statute. The title of Cal Pub. Res. Code § 42355 is "Plastic Products" and states California's public

12  policy with regard to false environmental claims on plastic products. Specifically, it states that: "[l]ittered

13  plastic products have caused and continue to cause significant environmental harm and have burdened

14  local governments with significant environmental cleanup costs," and that it is "the intent of the

15  Legislature to ensure that environmental marketing claims . . . do not lead to an increase in environmental

16  harm associated with plastic litter by providing consumers with a false belief that certain plastic products

17  are less harmful to the environment if littered." Hefty has violated this policy and this statute provides an

18  additional basis for Plaintiff's unfair "prong" claim discussed below.

19  Hefty argues, that even if Plaintiff has properly alleged a violation of the Green Guides, she must

20  still show that the claim is misleading to plead an actionable representation under the UCL (which

21  Plaintiff has already established, *supra*). ECF No. 18 at 11. But this is false. If it were true, then the UCL

22  unlawful prong would be completely subsumed by the deceptive prong. To plead an actionable

23  representation Plaintiff must simply plead a violation of law that caused harm to her. The reason that the

24  court in *Hill* applied the reasonable consumer standard to a UCL claim predicated on the Green Guides

25  was because the court was analyzing a particular violation that had incorporated the reasonable consumer

26  standard. *See Hill*, 195 Cal. 4th at 1303 (2011) ("Hill's beliefs do not satisfy the reasonable

27

28

consumer standard, as expressed in the FTC guides (16 C.F.R. § 260.7(a) (2011).")[9] When the Green Guides provide a clear standard of conduct that is per se deceptive, there is no reason to apply the reasonable consumer standard. For example, violation of 16 CFR § 260.12(b)(2) states that *it is deceptive* to make an implied recycling claim when recycling facilities are not "available to a substantial majority of consumers." "The term 'substantial majority,' as used in this context, means at least 60 percent." 16 CFR § 260.12(b)(1). Here, Plaintiff has adequately pled a violation of 16 CFR § 260.12 because Hefty has implied that the Products are recyclable but the Products are not recyclable for a "substantial majority" of consumers.[10]

### III.   Plaintiff Has Plausibly Alleged Violations of the UCL's "Unfair" Prong.

There are three tests a court can use to evaluate whether a practice is "unfair." *See Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53-54 (2010) (articulating the possible tests defining "unfair"). Hefty focuses only on the "tethering test," which asks whether the practice violates public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Id.* Hefty ignores the "balancing test" which asks whether the alleged practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of Hefty's conduct against the gravity of the harm to the alleged victim. *Id.* And the "FTC test," which holds that a practice is unfair if (1) the consumer injury is substantial; (2) it is not outweighed by any countervailing benefits; and (3) consumers could not reasonably have avoided the injury. *Id.* Plaintiff has adequately alleged an unfair practice under each of these tests.

First under the "tethering test," Hefty argues that because Plaintiff has not pled a close "nexus between the challenged act and the legislative policy," she has not established a violation of the "unfair" prong. ECF No. 18 at 12 (quoting *Hodsdon*, 891 F.3d at 866); *see also Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 544 (1999) (holding that for an act to be "unfair," it must "threaten[]" a violation of law or "violate[] the policy or spirit of one of those laws because its effects are

---

[9] Further, Hefty has misread *Shaeffer v. Califia Farms*, LLC, 44 Cal. App. 5th 1125, 1144-45 (2020). The court did not apply the reasonable consumer standard to unlawful claims under the UCL but separately applied the standard to the plaintiff's consumer statute claims based on deception. *See id.*

[10] Although Hefty separately pled a greenwashing cause of action in her Complaint, Plaintiff does not dispute that there is no private right of action for an EMCA on its own. Plaintiff's EMCA cause of action is brought pursuant to the unlawfulness prong of the UCL.

comparable to or the same as a violation of the law"). Hefty is wrong. First, there is a clear nexus between Hefty's failure to notify consumers that using the "Recycling" bags for ordinary curbside use will result in their recyclable items being landfilled, on one hand, and California's policy in favor of reducing plastic waste because the practice directly contributes to the accumulation of waste in landfills, on the other hand. This nexus is sufficient to support an unfairness claim. Second, Plaintiff has also cited authority showing that it is "the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." *See* Cal. Pub. Res. Code § 42355.5. Here, the challenged act—Hefty's failure to possess substantiation of its claims—directly violates an express and written public policy and has caused injury to Plaintiff. This is sufficient to show a nexus between the challenged act and the legislative policy and satisfies the "tethering test."

Hefty also argues that its practices cannot possibly violate public policy because there is no public policy against selling recycling bags. But the communities that Hefty cites in its brief represent approximately 0.1% of Californians. Hefty argues that its claim is not unfair or misleading because there is a narrow situation when its bags are actually used by cities for recycling. However, this is nonsense. Indeed, in two out of three of the communities that Hefty references, the "Blue Bags" are already delivered to residents. *See*, *e.g.* ECF No. 19-1 at 3 ("Through this program Recology Auburn Placer will deliver "blue bags" to City residents. The "blue bags" are the placed next to or into their garbage can on their designated pick up day."); ECF No. 19-2 at 2 (same). Further, Plaintiff does not seek to prevent Hefty from selling the Products, rather she seeks for Hefty to do so in a non-deceptive manner.

Hefty does not address the remaining two tests. However, Plaintiff plausibly alleges violation of the UCL's "unfair" prong pursuant to the balancing test and FTC test. Pursuant to the balancing test, (1) Hefty unethically and unscrupulously represents to consumers that the Products will allow them recycle their plastic waste without telling them that the bag they are purchasing will actually generate additional plastic waste and may lead to their otherwise recyclable items being landfilled, and (2) there is no utility in allowing Hefty to sell the bags to consumers without a disclaimer relative to the harm to consumers. Plaintiff also has adequately pled an "unfair" violation under the FTC test because (1) the consumer injury in the aggregate is substantial, (2) there is no benefit to allowing Hefty to sell the bags as

1   "Recycling" bags instead of as "Translucent Trash Bags," and (3) consumers could not have avoided the

2   injury because Hefty does not clearly state that the Products are made from unrecyclable LDPE plastic.

3   Further, under any test, whether a practice is unfair, "is one of fact which requires a review of the

4   evidence" and "thus cannot usually be" determined on the pleadings. *McKell v. Wash. Mut., Inc.*, 49 Cal.

5   Rptr. 3d 227, 240 (2006); *see also Rovai v. Select Portfolio Servicing, LLC*, No. 14-cv-1738-BAS-WVG,

6   2018 U.S. Dist. LEXIS 107764, at *47 (S.D. Cal. June 27, 2018) ("The balancing test should not be a

7   particularly difficult test to satisfy at the motion to dismiss stage").

8   **IV.   Plaintiff Is Entitled to Equitable Relief.**

9          Hefty finally argues that the Court should dismiss Plaintiff's claims for restitution, an injunction,

10  and other equitable relief pursuant to *Sonner v. Premier Nutrition Corp.* 971 F.3d 834, 838 (9th Cir. 2020)

11  because Plaintiff has alleged several claims that entitle her to legal remedies but this is incorrect.

12         In *Sonner*, just two months before trial, the plaintiffs voluntarily dismissed their only legal claim

13  (under the CLRA) in an attempt to secure a bench trial for their UCL claims, rather than a jury trial. *Id.* at

14  837. At the time of the dismissal, the CLRA claim had already survived a motion for summary judgment.

15  *Id.* at 838. The plaintiffs were thus unable to show that the CLRA claim would not have provided an

16  adequate legal remedy for them because the court knew that the CLRA claim was fit for trial. *Id.* at 844.

17  Here, by contrast, the proceedings are only at the pleading stage, and the extent to which certain legal

18  remedies may or may not be adequate for trial will not be known until much later in the litigation. Courts

19  in this District have held that, while there cannot be duplicative recovery of damages and restitution, there

20  is no bar to pleading alternative remedies. *See, e.g.*, *Minor v. Baker Mills, Inc.*, No. 3:20-cv-02901-RS, at

21  *4 (N.D. Cal. May 20, 2021) (applying *Sonner* and holding "dismissal of the claims for equitable relief are

22  not warranted at this juncture"); *Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS

23  61269, at *46 (N.D. Cal. Mar. 29, 2021) (applying *Sonner* and denying motion to dismiss when claims are

24  "rooted in a different theory" from fraud-based claims); *In re JUUL Labs, Inc., Mktg., Sales Practices, &*

25  *Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2020 U.S. Dist. LEXIS 197766, 2020 WL 6271173, at *55

26  (N.D. Cal. Oct. 23, 2020) (same).

27         Further, *Sonner* does not overrule Fed. R. Civ. Proc. 8(d)(2) which provides that "[a] party may set

28  out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or

defense or in separate ones." Here, Plaintiff's UCL and CLRA theories are alternative competing theories that advance different theories of relief. Relief for "unlawful" conduct, for example, is not available under any of Plaintiff's damages claims. And while the UCL broadly prohibits all fraudulent and deceptive actions, Plaintiff's CLRA claims prohibit only specifically enumerated types of misconduct. *See In re JUUL Labs.*, No. 19-MD-02913-WHO, 2020 U.S. Dist. LEXIS 197766, at \*55 (suggesting that a UCL claim can survive the adequate remedy at law challenge where "the allegations regarding unfair conduct are not otherwise coextensive with plaintiffs' legal claims"); *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 933 (N.D. Cal. 2012) ("The court agrees that if plaintiff prevails on his consumer protection claims but not under a contract theory, he may seek recovery in the form of restitution.").

Also, contrary to what Hefty has argued, Plaintiff does not plead a competing legal claim that can provide relief for her prospective and continuing injury. Hefty's citation to *Clark v. Am. Honda Motor Co.*, No. CV 20-03147 AB (MRWx), 2021 U.S. Dist. LEXIS 64520 at \*27 (C.D. Cal. Mar. 25, 2021), and *Huynh v. Quora, Inc.*, No. 5:18-cv-07597-BLF, 2020 U.S. Dist. LEXIS 241021, at \*59 (N.D. Cal. Dec. 21, 2020) is inapposite because, in both cases, the plaintiffs did not plead that they had an inadequate remedy at law for their prospective injuries. Here, that is not the case. *See* ECF No. ¶¶ 93, 102. Though the Court will ultimately need to "determine the adequacy of a remedy in law before resorting to equitable relief . . . it is premature to make the determination [at the motion to dismiss stage]." *Johnson*, 272 F. Supp. 3d at 1186. Nothing in *Sonner* changes this common-sense approach.[11]

## CONCLUSION

For the reasons set forth above, Hefty's motion to dismiss should be denied in full.

_____

[11] Hefty's other cited authority is also inapposite: *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 U.S. Dist. LEXIS 190508, at \*13 (N.D. Cal. Oct. 13, 2020) concerned defective keyboards. The court stated that the fact that the case involved a product defect was determinative. *Id.* ("[M]onetary damages are an adequate remedy for claims based on an alleged product defect, and reject the argument that injunctive relief requiring repair or replacement is appropriate"). This is not the case here because this is a false advertising case, not a product defect case. In *Adams v. Cole Haan,* No. SACV 20-913 JVS (DFMx), 2020 U.S. Dist. LEXIS 176002, at \*6 (C.D. Cal. Sep. 3, 2020) the court stated what Plaintiff advocates here, which is that Plaintiff is entitled to plead for legal damages and equitable damages in the alternative. However, in that case, the court found that Defendant had not pled that she was entitled to legal damages. Here, that is not the case because Plaintiff has pled that she requires injunctive relief to prevent her from repeatedly being harmed by Defendant's false advertising. *See* ECF No. ¶¶ 93, 102. *Gibson v. Jaguar Land Rover N. Am. LLC,* No. 20-769, 2020 U.S. Dist. LEXIS 168724, at \*9 (C.D. Cal. Sept. 9, 2020) is unavailing because the plaintiff in that case failed to explain monetary damages were inadequate. Here, Plaintiff has alleged, that she is likely to be repeatedly be harmed at least with regard to prospective harm.

Dated: July 13, 2021

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier /s/*
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiff