1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    LISABETH HANSCOM,                          Case No.  21-cv-03434-JSW

8                   Plaintiff,
                                                **ORDER GRANTING, IN PART, AND**
9            v.                                 **DENYING, IN PART, MOTION TO**
                                                **DISMISS; ORDER DENYING MOTION**
10   REYNOLDS CONSUMER PRODUCTS                 **TO STAY DISCOVERY**
     LLC, et al.,
11                                              Re: Dkt. Nos. 18, 34
                    Defendants.

12

13          Now before the Court for consideration are (1) the motion to dismiss Plaintiff's complaint

14   filed by Defendants Reynolds Consumer Products Inc. and Reynolds Consumer Products LLC

15   (collectively, "Reynolds" or "Defendants"); and (2) the motion to stay discovery filed by

16   Reynolds.  The Court has considered the parties' papers, relevant legal authority, and the record in

17   the case, and it finds these matters suitable for disposition without oral argument.  *See* N.D. Civ.

18   L.R. 7-1(b).  For the following reasons, the Court GRANTS, IN PART, and DENIES, IN PART,

19   Reynolds' motion to dismiss.  Reynolds' motion to stay discovery is DENIED as MOOT.

20                                    **BACKGROUND**

21          Plaintiff Lisbeth Hanscom ("Plaintiff") brings this putative class action on behalf of herself

22   and purchasers of Reynolds Hefty brand Recycling Bags.  Plaintiff alleges she purchased a box of

23   Hefty brand Recycling bags from a Safeway near her home in Oakland, California on September

24   15, 2020.  (Compl. ¶¶ 7, 40.)  She alleges that she "read the claim 'Recycling' bags on the Product

25   and purchased them because she believed that the bags were suitable for disposing of her

26   recyclables and that the bags themselves were recyclable."  (*Id*. ¶ 40.)

27          Plaintiff alleges that, after her purchase, she learned that the bags, which are made from

28   low-density polyethylene plastic ("LDPE"), are neither recyclable nor suitable for disposing of her

recyclables.  (*Id.*; *see also id.* ¶ 3.)  According to Plaintiff, LDPEs cannot be efficiently recycled and typically end up incinerated or in landfills.  (*Id*. ¶ 24.)  Recycling facilities often classify LDPEs as recycling contaminants, which means LDPE plastics are not accepted at recycling facilities.  (*Id*. ¶ 25.)  LDPEs are also considered recycling contaminants because their film can cause the machinery used to sort plastic to break down, thereby decreasing the recyclability of other items.  (*Id.*)  Because the Hefty "recycling" bags are not recyclable, the recycling facility must separate the bag from the materials it holds.  (*Id*. ¶ 29.)  According to Plaintiff, most recycling facilities end up throwing bagged recyclables into the trash to avoid the hazard of opening plastic bags that may contain dangerous items, and this makes Hefty's recycling bags harmful to the overall recycling process.  (*Id.*)

Plaintiff alleges that had she known the bags were not suitable for recycling and not recyclable, she would not have purchased them, or would not have paid a premium for them.  (*Id*. ¶ 40.)  Plaintiff alleges that she continues to desire to purchase bags that are suitable for recycling and are recyclable from Defendants, but she will have no way of determining whether the "recycling" representation is true "as long as Defendants use that phrase to describe products that are unsuitable for recycling and are not recyclable."  (*Id*. ¶ 41.)

Plaintiff asserts claims for violations of: California's Consumer Legal Remedies Act, Civil Code sections 1750, *et seq.* ("CLRA"); California's False Advertising Law, Business and Professions Code sections 17500, *et seq*. ("FAL"); and California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq*. ("UCL").  Plaintiff also asserts claims for "greenwashing" under the Environmental Marketing Claims Act, Business and Professions Code sections 17580, *et seq*., common law fraud, and negligent misrepresentation.

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

### A.    The Court Grants Reynolds' Request for Judicial Notice.

Generally, when evaluating a motion to dismiss, district courts may not consider material outside the pleadings.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  There are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice under

United States District Court
Northern District of California

Federal Rule of Evidence 201.  Each mechanism permits district courts to consider materials outside a complaint, but each does so for different reasons.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

Under Rule 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.*  Though a court may take judicial notice of matters of public record and properly consider those matters when evaluating a motion to dismiss, a court may not take judicial notice of disputed facts contained in such public records.  *Lee*, 250 F. 3d at 689 (quotations and citations omitted).

Incorporation by reference, on the other hand, is a judicially-created doctrine that treats certain documents as though they are part of the complaint itself.  *Khoja*, 899 F.3d at 1002.  This doctrine is a tool to prevent plaintiffs from highlighting only the portions of certain documents that support their claims, while omitting portions of those documents that weaken their claims.  *Id.* (citations omitted).  A court may incorporate a document by reference if the complaint refers extensively to the document or the document forms the basis for the plaintiff's claim.  *Id.* (citations omitted).  If a document "merely creates a defense" to the complaint's allegations, the document does not necessarily "form the basis of" the complaint.  *Id.* at 1002-03 ("Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.").  When a court incorporates a document by reference, it may assume all contents of the document are true for the purposes of a motion to dismiss under 12(b)(6).  *Id.* at 1003 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quotations omitted)).

Reynolds asks the Court to take judicial notice of 4 Exhibits.  (*See* Dkt. No. 19, RJN.)  Plaintiff filed an opposition to Reynolds' request for judicial notice, and Reynolds filed a response.[1]

---

[1] The Court has received the parties' responses to its Order to Show Cause, dated July 29, 2021.  (*See* Dkt. Nos. 30, 31.)  The Court finds good cause to consider the opposition and response filed

United States District Court
Northern District of California

1
2
3
4
5
6
7
8

Exhibits 1-3 are governmental webpages related to municipal recycling programs in three California cities.  Reynolds argues that the Court may take judicial notice of the webpages as "undisputed and publicly available information displayed on government websites."  *King v. County of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018).  Plaintiff opposes Reynolds' request for two reasons: (1) the webpages are not properly authenticated because Reynolds does not attest to when the pages were downloaded, available, or accessible; and (2) judicial notice of the webpages is improper to the extent Reynolds asks the Court to accept the truth of the facts asserted within the webpages.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

Plaintiff's arguments are unpersuasive.  First, information from government websites is self-authenticating.  Fed. R. Evid. 902(5); *see also Lucent Trans Elec. Co. v. Foreign Trade Corp.*, No. 18-8638, 2019 2620726, at *8 (C.D. Cal. May 21, 2019) (taking judicial notice of documents from state government websites under Fed. R. Evid. 201 and noting that information from government websites is self-authenticating).  Regarding Plaintiff's second argument, Plaintiff concedes that Reynolds' request for judicial notice of the webpages is only objectionable to the extent Reynolds seeks judicial notice of the truth of the webpages' contents.  In response, Reynolds clarifies that it does not request the Court take judicial notice of the truth of any matters set forth on the websites; it seeks judicial notice of the fact that the websites refer to municipal "blue bag" recycling programs.  Given Reynolds' clarification, the Court finds the webpages proper subjects of judicial notice under Fed. R. Evid. 201(b).   The Court GRANTS Reynolds' request for judicial notice of Exhibits 1-3.  The Court takes judicial notice of the existence and content of the webpages but does not take judicial notice of the truth of that content.  *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).

23
24
25
26

Exhibit 4 is six images of the packaging of Hefty Recycling bags, which show the six display panels of a box of Hefty Recycling bags.  Plaintiff disputes the authenticity of Exhibit 4 arguing that Reynolds has not established that "these images depict packaging that is the same as Plaintiff would have seen."  (Dkt. No. 23, Opp'n to RJN at 3.)  The Court does not find this

27
28

in connection with Reynolds' request for judicial notice.  The Court HEREBY DISCHARGES the Order to Show Cause without further action.

dispute reasonable.  The label statements on the packaging in Exhibit 4 are the same as the label statements alleged in the complaint.  (*Compare* RJN, Ex. 4 *with* Compl. ¶¶ 17-19.)  Moreover, as Reynolds argues, Plaintiff identifies no differences between the packaging in Exhibit 4.  She speculates that the packaging in Exhibit 4 could be different than that which Plaintiff saw, but she does not actually contend that Exhibit 4 presents a different version of the packaging than she purchased.  This distinguishes the present circumstance from the cases cited by Plaintiff, in which the plaintiffs disputed the authenticity of the exhibit and contended that the packaging offered as an exhibit differed from the packaging the plaintiffs purchased.  *See, e.g.*, *Reed v. Gen. Mills, Inc.*, No. 19-0005, 2019 WL 2475706, at *2 (W.D. Wash. June 13, 2019) (judicial notice of product packaging inappropriate where it was not properly authenticated and factual disputes remained surrounding what disclosures appeared on the labels at the time of the plaintiffs' purchases); *Fitzhenry-Russell v. Coca-Cola Co*., No. 17-603, 2017 WL 4680073, at *1 n.1 (N.D. Cal. Oct. 18, 2017) (declining to take judicial notice of more recent version of packaging where defendant provided no evidence to authenticate the packaging and plaintiff contended that the version of the product packaging was not the same as the version of the packaging she purchased).  The Court concludes that Exhibit 4 is a proper subject of judicial notice under Fed. R. Evid. 201(b) and GRANTS Reynolds' request for judicial notice of Exhibit 4.

**B.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim

1   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

2   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

3   556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

4          As a general rule, "a district court may not consider any material beyond the pleadings in

5   ruling on Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled*

6   *on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation

7   omitted).  However, documents subject to judicial notice may be considered on a motion to

8   dismiss.  *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other*

9   *grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  In doing so, the

10  Court does not convert a motion to dismiss to one for summary judgment.  *Id.*  The Court may

11  review matters that are in the public record, including pleadings, orders, and other papers filed in

12  court.  *See id.*

13         If the allegations are insufficient to state a claim, a court should grant leave to amend

14  unless amendment would be futile.  *See, e.g.*, *Reddy*, 912 F.3d at 296; *Cook, Perkiss & Liehe, Inc.*,

15  911 F.2d at 246-47.

16  **C.     Plaintiff's Consumer Deception Claims.**

17          **1.     "Recycling" Misrepresentation.**

18          In order to state a claim under the FAL, CLRA, UCL, and for negligent misrepresentation

19  and common law fraud, Plaintiff must allege facts satisfying the "reasonable consumer" standard,

20  *i.e.* that members of the public are likely to be deceived.  *See Williams v. Gerber Prods. Co.*, 552

21  F.3d 934, 938 (9th Cir. 2008); *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)

22  (citing *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20,

23  26 (1995)).

24                  "Likely to deceive" implies more than a mere possibility that the
                    advertisement might conceivably be misunderstood by some few
25                  consumers viewing it in an unreasonable manner.  Rather, the phrase
                    indicates that the ad is such that it is probable that a significant
26                  portion of the general consuming public or of targeted consumers,
                    acting reasonably in the circumstances, could be misled.
27

28  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *accord Fink*, 714 F.3d at 741

United States District Court
Northern District of California

1  (plaintiff must show "deceptive advertisements were likely to mislead a reasonable consumer

2  acting reasonably under the circumstances").

3       Whether a business practice is deceptive is an issue of fact not generally appropriate for

4  decision on a motion to dismiss.  *See, e.g.*, *Williams*, 552 F.3d at 938-39 (citing *Linear Tech.*

5  *Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)).  However, courts have

6  granted motions to dismiss under the UCL and similar statutes on the basis that the alleged

7  misrepresentations were not false, misleading, or deceptive as a matter of law.  *See, e.g.*, *In re*

8  *Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 989 (S.D. Cal.

9  2014); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (holding that reading flyer as a

10  whole dispelled plaintiff's allegation that a particular statement was deceptive).  Reynolds argues

11  that this is such a case, while Plaintiff argues it is not.

12       Here, Plaintiff alleges that reasonable consumers understand the "Recycling" statement on

13  the front label and the back label statements "Hefty Recycling Bags Are Perfect For All Your

14  Recycling Needs" and "Designed to Handle All Types of Recyclables" to mean that the Products

15  are suitable for disposing of recyclable waste and are themselves recyclable.  Plaintiff alleges that

16  the bags are in fact unsuitable for disposing of recyclable waste and are not themselves recyclable.

17       Reynolds contends that Plaintiff's theory of consumer deception fails because it does not

18  affirmatively represent that the bags are recyclable; the packaging represents that the bags are

19  "recycling" bags.  According to Reynolds, Plaintiff conflates "recycling" with "recyclable."

20  "Recycling" implies only that a product plays some role in the recycling process; "recyclable"

21  implies that an item can be recycled and reconstituted into new material.  Because Reynolds does

22  not state that the bags are recyclable, Plaintiff's consumer fraud claims fail.

23       In support of its argument, Reynolds relies on the Ninth Circuit's opinion in *Becerra v. Dr.*

24  *Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019).  In *Becerra*, the Ninth Circuit held as a

25  matter of law that reasonable consumers would not be misled into thinking that a soft drink

26  labeled as "Diet Dr. Pepper" would assist in weight loss.  945 F.3d 1225, 1227 (9th Cir. 2019).

27  The Ninth Circuit explained the plaintiff's assumption regarding weight loss was unreasonable

28  given that soft drinks and their diet counterparts are "common in the marketplace and the

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    prevalent understanding of the term in that context is that the 'diet' version of a soft drink has

2    fewer calories than its 'regular' counterpart." *Id.* at 1230.  The Court finds *Becerra*

3    distinguishable from the present case.  "Recycling" bags are far less common in the marketplace

4    than diet soft drinks.  The Court cannot conclude at this stage that there is a prevailing

5    understanding that "recycling" bags are not themselves recyclable.

6         Additionally, the Ninth Circuit's decision in *Becerra* was guided by the fact that the

7    plaintiff's interpretation of the word "diet" was contrary to the dictionary definition of the word

8    when used as an adjective, as it was on the product label.  Similarly, in *Chelsow v. Ghirardelli*

9    *Chocolate Co.*, the court relied on the common definition and understanding of the word "white"

10   in concluding that the plaintiff's interpretation of the term "white" as implying that the baking

11   chips were made of white chocolate was implausible.  445 F. Supp. 3d. 8, 16-17 (N.D. Cal. 2020).

12        Here, in contrast, the dictionary definitions of "recycling" are consistent with Plaintiff's

13   alleged understanding of the word.  "Recycling" is  defined as "the materials such as paper, glass,

14   and plastic that you collect to be recycled," which clearly aligns with Plaintiff's interpretation.

15   *See* Recycling, CAMBRDIGE DICTIONARY,

16   https://dictionary.cambridge.org/us/dictionary/english/recycling.  "Recycling" is also defined as

17   "the process of recycling."  *See* Recycling, MERRIAM-WEBSTER DICTIONARY,

18   https://www.merriam-webster.com/dictionary/recycling.  This definition is also consistent with

19   Plaintiff's theory of consumer of deception because Plaintiff alleges that the bags are detrimental

20   to the recycling process.  It is plausible that a reasonable consumer would be deceived to discover

21   that a product promoted as playing a valuable role in the recycling process in fact impedes that

22   process.  Accordingly, the Court cannot conclude as a matter of law that no reasonable consumer

23   would understand the term "recycling" on the packaging to mean that the bag is either capable of

24   being recycled or suitable for use in the recycling process.

25        Reynolds also argues that the context of the packaging renders Plaintiff's interpretation of

26   the term "recycling" even more implausible.  The back label states that the bags are "developed

27   for use in municipal recycling programs where applicable." (Compl. ¶ 18.)  Reynolds argues that

28   based on this statement, a reasonable consumer would understand that the bags are "specifically

designed for use in those municipal recycling programs that require or permit consumers to place recyclable waste in recycling bags prior to pick-up." (Mot. at 6.) Reynolds' argument is unconvincing. Plaintiff has plausibly alleged that term "recycling" on the front label is misleading, and that problem is not cured by a disclosure somewhere else on the packaging. *See Williams*, 552 F.3d at 939 (consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth" on the back of the box). Even if consumers looked to the back of box, the statement Reynolds points to does not clearly dispel the alleged deception. The Court agrees with Plaintiff that the statement could just as easily be interpreted by a reasonable consumer to mean that the bags are designed for use in localities that offer curbside municipal service. It is not an unambiguous disclaimer of the recyclability of the bags. The Court cannot conclude as a matter of law that the statement on the back label dispels consumer confusion as to the bags' recyclability.

Accepting Plaintiff's allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has plausibly stated a claim that a reasonable consumer would be deceived by the "recycling" claims on the packaging. Accordingly, the Court DENIES Reynolds' motion to dismiss on this basis.

### 2.    Fraud-by-Omission Claim.

Reynolds argues that Plaintiff has failed to state a plausible fraud-by-omission claim. Under California law, a fraud-by-omission claim requires that "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 835 (2006); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 & n.5 (9th Cir. 2012). "California courts have generally rejected a broad obligation to disclose." *Wilson*, 668 F.3d at 1141.

Reynolds argues that Plaintiff's fraud-by-omission claim based on a theory of affirmative misrepresentation fails because Reynolds never affirmatively misrepresented that the bags were recyclable, and so Plaintiff's argument fails for the same reason as her claim for affirmative misrepresentation. However, as discussed above, Plaintiff has plausibly alleged her claims of affirmative misrepresentation. Plaintiff alleges that Hefty represents that the bags are "recycling"

9

1   bags.  Plaintiff further alleges Hefty failed to disclose that the Products contaminate the waste

2   stream, decrease the recyclability of otherwise recyclable materials, and are not recyclable,

3   contrary to the "recycling" representations.  Plaintiff has sufficiently alleged an omission claim

4   based on affirmative misrepresentations.

5       Plaintiff also alleges an omission theory based on a duty to disclose.  (*See* Compl. ¶ 77;

6   Opp'n at 6:17.)  The parties agree that a duty to disclose arises only when the omission was

7   material, the omission relates to a fact that is central to the product's function, and one of the four

8   *LiMandri* factors applies.[2]  *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 853 (9th Cir. 2018).

9       Reynolds argues that the non-recyclability of the Hefty bags is not "central to the product's

10  function."  To satisfy this standard, Reynolds argues that Plaintiff must allege that the flaw in the

11  bags, *i.e.*, the non-recyclability, renders them "incapable of use by any consumer."  *Id*. at 864; *see*

12  *also Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1175 (2015).  According to

13  Reynolds, Plaintiff cannot make this showing because even if the bags themselves cannot be

14  recycled, the bags are not incapable of use; they can still be used by consumers to hold recyclable

15  goods.

16      In *Hodsdon*, the Court held that the existence of slave labor in a chocolate supply chain

17  lacked a connection to the "chocolate's function as chocolate."  891 F.3d at 864.  The Ninth

18  Circuit observed that "the central functionality of the product is not based on subjective

19  preferences about a product."  *Id*.  Instead, a central defect "renders those products incapable of

20  use by any consumer."  *Id*.  Two California Court of Appeal decisions—both cited by the Ninth

21  Circuit in *Hodsdon*—offer illustrative examples of defects that render a product incapable of use

22  such that its central function is impaired.  In *Collins v. eMachines, Inc*, the California Court of

23  Appeal held that a floppy disk defect that caused a critical data corruption of a computer's hard

24  drive "was central to the function of a computer as a computer" because floppy disks were the

25

26  [2] The *LiMandri* factors present four circumstances where a failure to disclose a material fact can
    constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff;
27  (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3)
    when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant
28  makes partial representations but also suppresses some material fact."  *LiMandri v. Judkins*, 52
    Cal. App. 4th 326, 337 (1997)).

*United States District Court*
*Northern District of California*

1    primary means of storing computer data and were integral to the store of computer data.  202 Cal.

2    App. 4th 249, 256 (2011).  In *Rutledge v. Hewlett-Packard Co.*, the court held that a defect in a

3    laptop display screen was central to the product's functionality where in order to use the laptop,

4    the consumer would require a connection to an outside monitor.  238 Cal. App. 4th at 1175.

5         Here, Plaintiff argues that the principal purpose of the recycling bags is to dispose of

6    recyclable waste.  Plaintiff contends that the bags are "all but useless" for this purpose because the

7    bags are not capable of being recycled.  However, as in *Hodsdon*, the recyclability of the bags is

8    not a physical defect that affects the product's functionality.  As Reynolds argues, even if not

9    themselves recyclable, the bags are still capable of being used by some consumers to dispose of

10   waste.  That is, the non-recyclability of the bags lacks a connection to the bag's function as a bag.

11   That the non-recyclability of the bag may affect its central function in some way is not sufficient

12   to establish a duty to disclose.  *See Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 514 (9th Cir.

13   2021) (rejecting the argument that any defect which affects a product's central function requires

14   disclosure).  Accordingly, Plaintiff fails to establish a defect going to the central function of the

15   product, and Plaintiff's omission theory based on a duty to disclose fails.[3]  For these reasons, the

16   Court GRANTS, IN PART, and DENIES, IN PART, Reynolds' motion on this basis.

17        **3.    Website Claims.**

18        Plaintiff alleges that Reynolds' website provides additional misrepresentations regarding

19   the bags' suitability for recycling.  (*See* Compl. ¶¶ 20-22.)  However, Plaintiff does not allege that

20   she saw the website, and Plaintiff concedes in opposition that she did not visit the website prior to

21   purchasing the bags.  Rather, Plaintiff contends that the allegations related to the website are

22   relevant to Reynolds' intent to deceive consumers, but that is not relevant to the reasonable

23   consumer analysis.  *See Samet v. Procter & Gamble Co.*, No. 12-1891, 2013 WL 6491143, at *5

24   (N.D. Cal. Dec. 10, 2013).  Accordingly, the Court does not consider Plaintiff's allegations

25   regarding website statements upon which she did not read or rely in evaluating her claims of

26

27   ─────────────────
     [3] Reynolds also argues that Plaintiff fails to show that the *LiMandri* factors apply.  Because the

28   Court concludes that Plaintiff has failed to allege a defect going to the central function of the bags,
     it will not address the parties' arguments regarding the application of the *LiMandri* factors.

United States District Court
Northern District of California

consumer deception. *See Prescott v. Reckitt Benckiser LLC*, No. 20-CV-02101-BLF, 2020 WL 7075624, at *4 (N.D. Cal. Dec. 3, 2020) (declining to consider allegations regarding television and YouTube commercials that plaintiff did not view in evaluating the plaintiff's UCL and CLRA claims); *see also Barrett v. Apple Inc.*, No. 5:20-cv-04812, 2021 WL 827235, at *11 (N.D. Cal. Mar. 4, 2021) (dismissing affirmative misrepresentation claims based on website statements where plaintiffs failed to allege they visited the website). The Court GRANTS Reynolds' motion on this basis.

**D.      Plaintiff's Unlawful Claim.**

The UCL's "unlawful" prong "borrows violations of other laws...and makes those unlawful practices actionable under the UCL." *Candelore v. Tinder, Inc.*, 19 Cal.App.5th 1138, 1155 (2018). When the underlying legal claim that supports a UCL cause fails, "so too will the [the] derivative UCL claim." *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal.App.5th 923, 950 (2018).

Plaintiff alleges that the use of the term "recycling" violates the Guides for the Use of Environmental Marketing Claims published by the Federal Trade Commission ("Green Guides") and sections 42355 and 42355.5 of the California Public Resources Code. California has incorporated the Green Guides via the Environmental Marketing Claims Act ("EMCA"). *See* Cal. Bus. & Prof. Code section 17580.5 (making it unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied and noting that "environmental marketing claim" includes any claim contained in the Green Guides). Plaintiff alleges that these claims serve as a predicate violation for the unlawful prong of the UCL.[4]

The Green Guides provide that it is "deceptive to misrepresent, directly or by implication, that a product or package is recyclable." 16 C.F.R. section 260.12(a). It states that "[a] product or

---

[4] In the complaint, Plaintiff alleged a stand-alone cause of action for greenwashing in violation of the EMCA. (*See* Compl. ¶¶ 89-93.) Reynolds moved to dismiss on the basis that no private right of action exists for violations of the EMCA. In opposition, Plaintiff abandoned her stand-alone greenwashing cause of action and clarified that she brings the EMCA cause of action pursuant to the unlawful prong.

United States District Court
Northern District of California

1   package should not be marketed as recyclable unless it can be collected, separated, or otherwise

2   recovered from the waste stream through an established recycling program for reuse or use in

3   manufacturing or assembling another item." *Id*.  It goes on to state that "[i]f any component

4   significantly limits the ability to recycle the item, any recyclable claim would be deceptive." *Id*.

5   section 260.12(d).

6        Section 42355 of the California Public Resources Code states that "[u]se of the term

7   'degradable,' 'biodegradable,' 'decomposable,' or other like terms on plastic products is

8   inherently misleading unless the claim includes a thorough disclaimer providing necessary

9   qualifying details, including, but not limited to, the environments and timeframes in which the

10  claimed action will take place."  Cal. Pub. Res. Code section 42355.  Section 42355.5 provides

11  that "environmental marketing claims, whether explicit or implied, should be substantiated by

12  competent and reliable evidence to prevent deceiving or misleading consumers about the

13  environmental impact of plastic products." *Id*. section 42355.5

14       Reynolds argues that Plaintiff's unlawful claim fails because "recycling" does not fall

15  within the ambit of the Green Guides or California's environmental marketing statutes.  Reynolds

16  argues that although the Green Guides prohibit manufacturers from deceptively representing that a

17  product is recyclable, the Green Guides do not prohibit the "recycling" representation at issue

18  here.  And because Reynolds never represented that the bags were recyclable, Plaintiff's unlawful

19  claim based on a violation of the Green Guide fails.

20       The fact that the Hefty bags are not explicitly labeled "recyclable" does not necessarily

21  place it outside the scope of the Green Guides.  The Green Guides applies also to representations

22  that imply a product is recyclable.  *See* 16 C.F.R. § 260.12(a); *see also id.* § 260.12(d), Example

23  10 (noting that a can labeled "Please Recycle" likely conveys that the can is recyclable).).

24  Reynolds concedes this point but argues that its labeling does not imply that the bags are

25  recyclable.  Reynolds points to *Hill v. Roll Internat. Corp.*, to support its argument.  195 Cal. App.

26  4th 1295.  In *Hill*, the plaintiff alleged that an image of a green drop on a Fuji Water bottle label

27  conveyed that the water was environmentally superior and had been independently evaluated by a

28  third-party environmental watchdog group.  *Id*. at 1298.  Although the court assumed reasonable

13

consumers would view the green drop as referring to the environment, the court rejected the

plaintiff's argument that a reasonable consumer would understand the green drop to convey a

message of environmental superiority or third-party approval. *Id.* at 1304-05. As a result, the

court affirmed the trial court's dismissal of the UCL claims because the Green Guides do not

prohibit " 'touting' a product's 'green' features" so long as the environmental marketing claims do

not mislead reasonable consumers. *Id.* at 1305. But here, in contrast to *Hill*, a reasonable

consumer viewing the "recycling" claim could be misled as to the suitability of the bags for

recycling.

The parties dispute whether the reasonable consumer standard applies to Plaintiff's

unlawful claim. In *Bruton v. Gerber Prods. Co.*, the Ninth Circuit stated that "[t]he best reading

of California precedent is that the reasonable consumer test is a requirement under the UCL's

unlawful prong only when it is an element of the predicate violation." 703 Fed. App'x 468, 471-

72 (9th Cir. 2017). In this case, Plaintiff's unlawful claim is based on violations of the Green

Guides, which provide that it is "deceptive to mispresent […] that a product or package is

recyclable." (*See* Compl. ¶ 33 (citing 16 C.F.R. § 260.12(a).). Because the predicate violation

includes a requirement that the public be likely to experience deception, the Court finds the

reasonable consumer standard applies to Plaintiff's unlawful claim. *See also See Smith v. Keurig*

*Green Mountain, Inc.*, 393 F. Supp. 3d 837, 846-47 (N.D. Cal. 2019) (citing *Hill* and applying

reasonable consumer standard in analyzing plaintiff's unlawful claim predicated on environmental

mismarketing claims). However, as discussed above, Plaintiff's allegations satisfy the reasonable

consumer test. Accordingly, Plaintiff has plausibly alleged that the recycling claim is prohibited

under the FTC's Green Guides. She therefore has plausibly alleged an "unlawful" claim under the

UCL, and the Court DENIES the motion to dismiss on this basis.

Reynolds also argues that "recycling" falls outside the scope of Section 42355, which

applies to claims such as "degradable," "biodegradable," "decomposable," and "other like terms."

*See* Cal. Pub. Res. Code section 42355(d). Plaintiff argues that Reynolds' narrow focus on just

one subsection of the statute ignores that the statute more broadly expresses California's public

policy in favor of reducing plastic waste, which Reynolds allegedly violates with its "recycling"

1   claim.  Plaintiff's argument, however, does not establish that the challenged "recycling" claim is

2   an environmental marketing claim as defined in Section 42355.  And Plaintiff's allegations that

3   the "recycling" claim is in violation of Section 42355.5's public policy seem more relevant to her

4   claims under the UCL's "unfair" prong.  Accordingly, Plaintiff fails to allege that Section 42355

5   forms a basis of its unlawful claim, and the Court GRANTS the motion to dismiss on this basis.

6   **E.      Plaintiff's Unfair Claim.**

7          The "unfair" prong of the UCL creates a cause of action for a business practice that is

8   unfair even if not proscribed by some other law.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29

9   Cal. 4th 1134, 1143 (2003).  "The UCL does not define the term 'unfair' ... [and] the proper

10  definition of 'unfair' conduct against consumers 'is currently in flux' among California courts."

11  *Hodsdon*, 891 F.3d at 866.

12         Some California courts apply a balancing test, which requires courts to "weigh the utility

13  of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis v. HSBC*

14  *Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotation marks omitted).

15  Other California courts apply a "tethering" test, under which the "unfairness must be tethered to

16  some legislatively declared policy or proof of some actual or threatened impact on competition."

17  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (internal quotation

18  marks omitted).[5]

19         Plaintiff alleges that "Defendants' marketing of the Products as suitable and beneficial for

20  recycling purposes is an unfair practice under the UCL, as it undermines both state and local

21  policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in

22  the environment."  (Compl. ¶ 30.)  Plaintiff further alleges that the manufacture and use of

23  unnecessary LDPE plastic bags—which cannot be recycled and can complicate and contaminate

24  _____

25  [5] Courts have employed a third test, based on the three-prong test set forth in section 5 of the FTC, under which a party alleges an "unfair practice" if "(1) [t]he consumer injury [is] substantial; (2)
26  the injury [is not] outweighed by any countervailing benefits to consumers or competition; and (3) it [is] an injury that consumers themselves could not reasonably have avoided."  *Graham*, 226 Cal. App. 4th at 613.  *See Camacho v. Automobile Club of S. Cal.*, 142 Cal.App.4th 1394, 1403 (2006).
27  However, this test is generally applied to claims of unfair competition between direct competitors and is not widely applied in the consumer context.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504
28  F.3d 718, 736 (9th Cir. 2007).  For this reason, the Court does not address the third test here.

15

1  the collection and recycling of truly recyclable materials—undermines the public policies that

2  recycling programs, and consumers who recycle, seek to achieve.  *Id*.  Plaintiff alleges that

3  California public policy favors protecting consumers from being deceived about the environmental

4  impact of plastic products.  Plaintiff alleges that this policy is based on the finding that littered

5  plastic products cause significant environmental harm and burden to local governments.

6      The question is whether the unfair act—Reynolds' misleading labeling—is tethered to this

7  legislative policy.  "To determine whether something is sufficiently "tethered" to a legislative

8  policy for the purposes of the unfair prong, California courts require a close nexus between the

9  challenged act and the legislative policy."  *Hodsdon*, 891 F.3d at 866 (quoting *Cel-Tech*, 83

10  Cal.Rptr.2d 558).  Reynolds argues that the supposed nexus between the use of the phrase

11  "recycling" and the accumulation of plastic waste in landfills is too far removed to state an

12  "unfair" claim.  According to Reynolds, Plaintiff has not plausibly alleged that the "recycling"

13  claims on the packaging results in the use of more plastic or that the removal of this phrase would

14  meaningfully affect consumers' recycling practices.  Reynolds argues that consumers who are

15  inclined to use recycling bags would simply use trash bags instead, leading to the same amount of

16  plastic waste.  Because Plaintiff's belief that plastic bags should play no role in the recycling

17  process is subjective, the Court cannot hold Reynolds liable for an unfair claim.

18      Reynolds relies on *Hodsdon*, in which the Ninth Circuit found that the plaintiff failed to

19  state a claim under the unfair prong because there was not a close enough nexus between a public

20  policy against certain labor practices and the failure to place certain disclosures on consumer

21  labels.  891 F.3d at 866.  The Ninth Circuit explained that although "labeling chocolate bars may

22  indirectly exacerbate slave labor in the supply chain…the labeling of the products [is] too far

23  removed from the…policies to serve as a basis for a UCL claim."  *Id*.

24      Here, the alleged nexus between the challenged action—the labeling of the bags as

25  "recycling"—and the policy at issue—a policy in favor of recycling and against misleading

26  environmental marketing claims— is closer than that in *Hodsdon*.  Plaintiff sufficiently alleges

27  that Hefty's labeling practices contravene the public policy in favor of reducing plastic waste

28  because the materials placed inside the bags are diverted to landfill instead of being recycled, as

16

intended.  Accordingly, the challenged conduct here is sufficiently tethered to the policy at issue.

The Court also finds that Plaintiff's allegations satisfy the balancing test.  Under the balancing test, a business practice is unfair if the harm to the victim outweighs the utility of the defendant's conduct.  Here, Plaintiff alleges that Reynolds represents that the bags are suitable for use in the recycling process when in reality the bags provide no benefit to the collection or transport process and are detrimental to that process.  Reynolds does not address the utility of its conduct except to assert that certain municipalities mandate the use of similar clear bags for recyclables.  At this stage, applying the balancing test, Plaintiff has adequately stated a claim under the "unfair" prong.  *See Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929 (N.D. Cal. 2015) ("Courts are reluctant to grant motions to dismiss "unfair" UCL claims under the balancing test, because the test involves weighing evidence that is not yet properly before the court.").

Plaintiff's allegations are sufficient to state a claim under the "unfair" prong of the UCL at this stage of the proceeding applying either the balancing test or the tethering test.  Accordingly, the Court DENIES Reynolds' motion to dismiss on this basis.

**F.      Adequate Remedy at Law.**

Finally, invoking *Sonner v. Premier Nutrition Corp.*, Reynolds argues that the Court should dismiss Plaintiff's claims for restitution, an injunction, and other equitable relief because she fails to allege that she lacks an adequate remedy at law.  971 F.3d 834 (9th Cir. 2020). Reynolds argues that several of Plaintiff's claims permit her to recover money damages, and because those damages would adequately compensate her for the alleged "price premium" she paid for Hefty recycling bags, *Sonner* bars her from seeking equitable relief.

Plaintiff argues that *Sonner* does not bar her claims for equitable relief for several reasons. First, Plaintiff argues that *Sonner* is distinguishable based on its procedural posture.  *Sonner* addressed the issue of plaintiff's equitable claim for restitution on the eve of trial, unlike here, where the proceedings are at the pleading stage.  The Court agrees with many other courts in this circuit in rejecting Plaintiff's attempt to distinguish *Sonner* on this basis.  *See, e.g.*, *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-

PJH, 2020 WL 6544411, at *4 (N.D. Cal. Nov. 6, 2020); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20-cv-1765-GPC (BGS), 2021 WL 1541649, at *9 (S.D. Cal. Apr. 20, 2021) (citing cases).

Next, Plaintiff argues that *Sonner* does not overrule Fed. R. Civ. P. 8(d)(2), which permits a plaintiff to pursue alternative claims for relief.  In *Sonner*, the Ninth Circuit held that a plaintiff must allege that she "lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." 971 F.3d at 844.  Given this clear rule expressed in *Sonner* and Plaintiff's failure "to explain why Rule 8's general permission for alternative pleading limits otherwise applicable principles of federal common law," the Court does not find this argument convincing.  *See IntegrityMessageBoards.com*, 2020 WL 6544411, at *5; *see also Sharma v. Volkswagen AG*, No. 20-cv-02394-JST, 2021 WL 912271, at *8 (N.D. Cal. Mar. 9, 2021) ("The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy.  On that point, *Sonner* holds that it does not.").

Plaintiff also contends that her UCL and CLRA are "alternative competing theories that advance different theories of relief," and for this reason they should survive the adequate remedy at law challenge.  (Opp'n at 22.)  This argument is unpersuasive.  Plaintiff's claims are rooted in the same theory and factual allegations that Reynolds misrepresents the recyclability of the bags.[6] Therefore, this does not change the Court's conclusion that to show entitlement to relief as to these claims, Plaintiff must demonstrate that she lacks an adequate remedy at law to proceed with her claims for equitable relief.

With regard to her requests for restitution, Plaintiff has not pleaded that she lacks an

---

[6] This distinguishes this case from *Elgindy v. AGA Serv. Co.*, which Plaintiff cites.  No. 20-cv-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021).  In that case, the plaintiffs advanced two theories: (1) that the challenged service fee was an unlawful "agent" fee or insurance premium upcharge; and (2) that the defendants acted fraudulently by concealing the fact that the service fees were included in the insurance policy's total price.  *Id*. at *4.  The court permitted the plaintiff to pursue equitable relief under the first theory because only equitable claims were available on that theory.  *Id*. at *15.  However, with regard to the fraud-based claims, the plaintiffs were required to demonstrate that they lacked an adequate remedy at law to show an entitlement to equitable relief. *Id*.

18

adequate remedy at law, and she has not offered a reason why the remedies at law requested would be inadequate.  (*See* Compl. ¶¶ 59, 69.)  Accordingly, the Court grants the motion to dismiss the claims for equitable restitution. However, because it is possible that Plaintiff could plead that she lacks an adequate remedy at law, for example, if she adequately alleged that the legal remedies would be inadequate to what restitution could provide, for example that restitution would go beyond the damages available to them or that restitution would be more prompt, efficient, or certain, the Court grants Plaintiff leave to amend.  *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009-10 (N.D. Cal. 2020).

With regard to her claims for prospective injunctive relief, Plaintiff alleges that she lacks an adequate remedy at law because absent an injunction, Reynolds will continue to deceive consumers.  In this case, monetary damages would not necessarily be sufficient to remedy the alleged harm insofar as Plaintiff alleges that she would like to keep buying the bags but is deterred from doing so because she will be unable to determine if the bags' labeling is truthful.  The Court concludes that Plaintiff has plausibly alleged that she lacks an adequate remedy at law for injunctive relief.  *See Brooks v. Thomson Reuters Corp.,* No. 21-CV-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (declining to apply *Sonner* to bar UCL claims for prospective injunctive relief because "the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice").

For these reasons, the Court GRANTS Reynolds' motion to dismiss as to Plaintiff's claims for equitable restitution and DENIES the motion as to Plaintiff's claims for injunctive relief.

**G.      The Court Denies Reynolds' Motion to Stay Discovery.**

Reynolds has filed a motion to stay discovery pursuant to Federal Rule of Civil Procedure 26(c) asking the Court to stay discovery pending a decision on Reynolds' motion to dismiss. Reynolds argues that a stay is warranted because its motion to dismiss is potentially dispositive of the entire case.  It also contends that a discovery stay would avoid the unnecessary burden and expense of discovery in the event the case does not survive the pleading stage.  Reynolds asks the Court to stay discovery until Reynolds' answer is due, or in alternative, until the Court rules on Reynolds' pending motion to dismiss.

United States District Court
Northern District of California

The Court has ruled on Reynolds' motion to dismiss and determined that Plaintiff has largely met her burden of pleading a plausible claim. Moreover, although the Court has granted Reynolds' motion in part, it does not find it would be prudent to delay discovery until after the pleadings are settled as any amendment to the complaint likely will not significantly alter the scope of the claims. Accordingly, in light of the Court's ruling on Reynolds' motion to dismiss, the Court DENIES Reynolds' request for a stay of discovery as MOOT.

**CONCLUSION**

For the foregoing reasons, Reynolds' motion to dismiss is GRANTED, IN PART, and DENIED, IN PART. Should Plaintiff choose to file an amended complaint to remedy the deficiencies identified in this order, she may do so within 21 days.

Reynolds' motion to stay discovery is DENIED as MOOT.

**IT IS SO ORDERED.**

Dated: October 1, 2021

_____
JEFFREY S. WHITE
United States District Judge