1

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)

2

MARIE MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250

3

San Francisco, CA 94111
Telephone: (415) 639-9090

4

Facsimile: (415) 449-6469

5

Attorneys for Plaintiff

6

UNITED STATES DISTRICT COURT

7

NORTHERN DISTRICT OF CALIFORNIA

8

9

LISABETH HANSCOM, on behalf of herself
and those similarly situated,

10

Plaintiff,

11

v.

12

13

REYNOLDS CONSUMER PRODUCTS INC.
and REYNOLDS CONSUMER PRODUCTS

14

LLC,

15

Defendants.

Case No.: 4:2021-cv-03434

**FIRST AMENDED CLASS ACTION
COMPLAINT**

JURY TRIAL DEMANDED

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Lisabeth Hanscom, by and through her counsel, brings this First Amended Class Action Complaint ("Complaint") against Defendants Reynolds Consumer Products Inc. and Reynolds Consumer Products LLC ("Defendants"). The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

**INTRODUCTION**

1.     This Complaint seeks to remedy Defendants' unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, and sale of Hefty brand Recycling Bags (the "Products").

2.     Plastic waste is an increasingly dire international problem. Nearly 90% of plastic waste is not recycled. Much of the unrecycled plastic waste ends up in the ocean. Indeed, over 12 million tons of plastic enters the ocean each year.[1] As consumers have become increasingly aware of the problems associated with pollution, many consumers actively seek to purchase Products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

3.     Seeking to take advantage of consumers' demands for such Products, Defendants market plastic trash bags under the Hefty trademark as "Recycling" bags. They explain on the back of the label that "Hefty Recycling Bags are Perfect For All Your Recycling Needs" and are "Designed to Handle All Types of Recyclables." The website also confirms that the Products are "designed to handle your heaviest recycling jobs" and "these transparent bags make it easy to sort your recyclables and avoid the landfill." Reasonable consumers understand this to mean that the Products are suitable for disposing of recyclable waste and are recyclable. In truth, the bags contaminate the recyclable waste stream, decrease the recyclability of otherwise recyclable materials, and are not recyclable because they are made from low-density polyethylene plastic ("LDPE" or "No. 4 plastic").

4.     In the United States municipal recycling facilities ("MRFs") collect recyclable

---

[1] Nick Young, *How does plastic end up the ocean?*, https://www.greenpeace.org/new-zealand/story/how-does-plastic-end-up-in-the-ocean/ (last accessed January 20, 2021).

FIRST AMENDED CLASS ACTION COMPLAINT

waste, often through curbside pickup. The recyclable waste is sorted and sold to facilities that can process the material into clean flake material that can be sold and used to make new plastic items. However, it is not cost effective to process LDPE plastic domestically. And, over the past few years, due to foreign export restrictions, the foreign market for LDPE plastic has all but been eliminated. As a result, products made of LDPE plastic end up incinerated, in landfills or in the environment. What is more, most MRFs classify products made of LDPE film as a recycling contaminant because they can clog up recycling equipment and reduce the value of otherwise recyclable items, including otherwise recyclable plastics. Indeed, "[w]hen bagged items come through the sort line, [MRFs] throw it in the trash."[2] As a result, the Products are not only non-recyclable but they are unsuitable for disposing of recycling.

5.      Defendants know that the Products typically end up in landfills or incinerated and are a contaminant unsuitable for recycling. Defendants' representations that the Products are "Recycling" bags are material, false, misleading and likely to deceive members of the public.

6.      This action seeks an injunction precluding the sale of the Products within a reasonable time after entry of judgment, unless the Products' packaging and marketing are modified to remove the "Recycling" bags misrepresentation and to disclose the omitted facts about their true recyclability. Plaintiff further seeks an award of damages and/or restitution to compensate her and those similarly situated for Defendants' acts of unfair competition and false and misleading advertising.

## **PARTIES**

7.      Plaintiff Lisabeth Hanscom ("Plaintiff") is a citizen of California, and was at all relevant times, a resident of Oakland, CA. On or about September 15, 2021, Plaintiff purchased a box of Hefty brand Recycling Bags.

8.      Defendant Reynolds Consumer Products Inc. is a publicly traded corporation

---

[2] Angela Hill, *Bay Area recycling tips: Can I recycle that or not?*, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited May 6, 2021).

organized and existing under the laws of the state of Delaware, having its principal place of business in Lake Forest, IL. Defendant Reynolds Consumer Products Inc. is the parent company of Reynolds Consumer Products LLC.

9.     Defendant Reynolds Consumer Products LLC is a company organized and existing under the laws of the state of Delaware, having its principal place of business in Lake Forest, IL. Defendant Reynolds Consumer Products LLC is a wholly owned subsidiary of Reynolds Consumer Products Inc. and owns the Hefty trademark.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more Class Members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

11.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

12.     The injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California.

13.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

14.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that she purchased the Products in Alameda County, California. (*See* Exhibit A.)

15.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUBSTANTIVE ALLEGATIONS**

**(1) Defendants' False Representations Regarding the Products Suitability for Recycling and Recyclability.**

16.     Defendants manufacture, market, and sell Hefty Recycling Bags in 13 and 30 gallon sizes. Defendants also offer multiple color SKUs, including transparent blue or clear. The Products are made of low-density polyethylene or No. 4 plastic.

17.     Defendants place the prominent representation "RECYCLING" on the front label of the Products with a green background and white font. Next to the representation, Defendants include images of the Products filled with recyclable waste:



FIRST AMENDED CLASS ACTION COMPLAINT

1

18.     The back of the package includes language such as "HEFTY RECYCLING

2   BAGS ARE PERFECT FOR ALL YOUR RECYCLING NEEDS":

3

4

5

6

7

8   

9

10

11

12

13

14

15   19.     A zoomed in shot of the back label shows that Defendants also include the

16   representations "DESIGNED TO HANDLE ALL TYPES OF RECYCLABLES" and

17   "TRANSPARENT FOR QUICK SORTING AND CURBSIDE IDENTIFICATION":

18

19      

20

21

22

23

24

25   20.     Defendants' website provides additional misrepresentations about the suitability

26   of the Products for recycling stating that they "[r]educe your environmental impact" and are

27   "designed to handle your heaviest recycling jobs." Defendants' add, "[t]hese transparent bags

28

make it easy to sort your recyclables and avoid the landfill":

## HEFTY® RECYCLING BAGS

· · · · · · · · · ·

Reduce your environmental impact with Hefty® Recycling bags designed to handle your heaviest recycling jobs. Available in 13 and 30 gallon sizes and ideal for daily use or seasonal cleaning, these transparent bags make it easy to sort your recyclables and avoid the landfill.

- Arm & Hammer™ patented odor neutralizer*
- Transparent clear or blue option for easy sorting
- Designed to handle all types of recyclables

**BUY NOW**

| Sizes Available | Colors Available |
|---|---|
| · 13 gal<br>· 30 gal | · Clear transparent<br>· Blue transparent |

https://www.hefty.com/products/trash-bags/clear-and-blue-recycling-bags

21.     Defendants sell the Products on Amazon.com and on its website with images showing how to use the Product:



FIRST AMENDED CLASS ACTION COMPLAINT

https://www.hefty.com/products/trash-bags/clear-and-blue-recycling-bags

22.   Defendants also sell the products along with video advertisement showing that the bags are appropriate for putting in the recycling bin with other recyclable waste:



https://www.hefty.com/products/trash-bags/clear-and-blue-recycling-bags

## (2) LDPE Bags Are Not Recyclable and Instead Are a Harmful Contaminant

23.   Recycling is "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." Cal. Pub. Res. Code § 40180. Thus, "recyclable" products must, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse or use in manufacturing another item.

24.   In the United States, after plastics are discarded into a recycling bin, they are sent to a MRF where the plastics are sorted by resin type. Plastics numbered #3-7 are batched together to form mixed bales which require further processing. However, "the economics [of

processing those bales] have proven insurmountable."[3] Prior to 2018, MRFs in the United States exported #3-7 mixed bails, primarily, to China. However, on January 1, 2018, China enacted the National Sword policy which limits plastic waste imports. There is, however, minimal demand, value, and processing capacity for them in the United States. Thus, mixed plastic #3-7 bales which were "previously exported to China now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'"[4] As a result, the majority of LDPE or No. 4 plastic sent to recycling facilities is incinerated, which releases large quantities of greenhouse gases and toxic air emissions.

25.     Not only are LDPE plastics, such as the Products, unrecyclable, but in many cases they contaminate the waste stream and decrease the recyclability of otherwise recyclable items. Contaminants are any plastic materials that MRFs do not accept or decrease the recyclability of other items. Because the Products are made of LDPE film they are especially problematic. Plastic films risk clogging and breaking down machinery used to sort recyclable products. As a result, many MRFs do not accept plastic bags at all.

26.     A high presence of contamination, including unrecyclable films such as LDPE, in the recycling stream, makes otherwise recyclable plastic materials unrecyclable because purchasers of recyclable materials value bales of plastic by the percentage of unrecyclable contaminant present in the bales. If contamination exceeds a certain level, the bale must be incinerated or sent to a landfill.  Therefore, not only is LDPE not recyclable, it may also prevent recycling of otherwise recyclable materials.

27.     Accordingly, Defendants' use of LDPE plastic means their Products are not recyclable and the labels claims regarding recyclability are therefore false.

28.     Defendants further represent and mislead consumers into believing that the Products are useful and beneficial for recycling purposes, including as containers for recyclable

_____

[3] *Circular Claims Fall Flat,* Greenpeace, at 10, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (last visited Apr. 27, 2021).

[4] *Id* at 11.

materials during collection, transport and sorting. But the use of the Products as containers for recyclables is both unnecessary and counterproductive.

29.     As a general rule, recyclables should be clean and dry and should be placed directly in a collection bin *without the use of a plastic bag or liner*. Accordingly, the Products are not beneficial to either the collection or transport processes, which are designed to work without such bags. Even worse, the Products add work, expense, and waste to the sorting and recycling processes at recycling facilities, as they must be separated from recyclable materials and then disposed of. Most MRFs do not bother with this process due to the hazard of opening plastic bags that may contain "broken glass, syringes" and simply throw bagged recyclables directly into trash.[5] Use of the Products thereby decreases the efficiency of and increases the cost of recycling programs, and ultimately adds to the problems of plastic accumulation and plastic contamination in the environment (problems that recycling programs are intended to ameliorate). In sum, the Products are not suitable for recycling and are actually harmful, not beneficial to the overall recycling process.

30.     At a minimum, Defendants' marketing of the Products as suitable and beneficial for recycling purposes is an unfair practice under the UCL, as it undermines both state and local policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment. The manufacture and use of unnecessary LDPE plastic bags—which cannot be recycled and that complicate and contaminate the collection and recycling of truly recyclable materials—undermines the public policies that recycling programs, and consumers who recycle, seek to achieve.

### (3) Defendants' Marketing of the Products Violates California Public Policy and the Federal Trade Commission Green Guides

31.     The State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by

---

[5] *See*, *e.g.*, Angela Hill, *Bay Area recycling tips: Can I recycle that or not?*, The Mercury News, https://www.mercurynews.com/2016/03/08/bay-area-recycling-tips-can-i-recycle-that-or-not/ (last visited May 6, 2021).

competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." *Id.* § 42355.

32.     Additionally, California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for Use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides"). Cal. Bus. & Prof. Code § 17580.5; *see also* 16 C.F.R. § 260.1, *et seq.* As detailed below, Defendants' marketing of the Products as "Recycling" bags violates several provisions of the FTC's Green Guides.

33.     First, Defendants' marketing of the Products as "Recycling" bags violates the Green Guides provisions prohibiting the labeling of products as recyclable unless the products can actually be converted into reusable material. Section 260.12(a) of the Green Guides provides that it is "deceptive to misrepresent, directly or ***by implication***, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." (Emphasis added.) Defendants' use of the words "Recycling" bags with images of the bags placed in recycling bins implies that the Products are recyclable. The Green Guides further explain that "[m]arketers should ***clearly and prominently*** qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b) (emphasis added).  And in promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." *See* 63 Fed. Reg. 84, 11 24247 (May 1,

1998). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.*, at 24243.

34.     Although Defendants state that the Product is "DEVELOPED FOR USE IN MUNICIPAL RECYCLING PROGRAMS WHERE APPLICABLE" on the back of the box in a small and inconspicuous font, the statement fails to qualify the fact that the Products are made from LDPE and that LDPE bags are not recyclable nor are they suitable for recycling. In the absence of clarifying language, reasonable consumers understand this to mean that the Product is designed for recycling wherever municipal recycling is available, which is false. Therefore, the representation is neither a clear nor prominent disclaimer as required by the Green Guides.

35.     Defendants' marketing of the Products as "Recycling" bags violates these provisions of the Green Guides because Defendants falsely imply that their product is suitable for recycling and is recyclable even though the Products cannot be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some curbside programs, LDPE waste is ultimately incinerated or sent to landfills.

36.     Further, the Green Guides require marketers to support their environmental claim with a reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendants do not possess information sufficient to support their claims that the Products are "Recycling" bags.

### (4) Defendants Misleadingly Market the Products to Increase Profits and Gain a Competitive Edge.

37.     Defendants market the Products as "Recycling" bags to capitalize on consumer

demand for "green" products. In particular, Defendants intend for reasonable consumers to believe, and reasonable consumers do believe, that the Products are suitable for disposing of recyclable items and do not contaminate the recycling waste stream. Further, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are "Recycling" bags, they are recyclable. Finally, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are "Recycling" bags, they are specially designed to be environmentally superior to competitors' products that do not contain the same representation.

38.    Defendants' illegal marketing campaign has been extremely successful. Defendants are among the largest sellers of trash bags nationally. The Products are sold in grocery stores, drug stores, and big box stores throughout California and the country. Because of the big potential for sales, Defendants have no incentive to stop claiming that the Products are "Recycling" bags or change their disclaimers to discourage sales.

39.    Because consumers are led to believe the Products are "Recycling" bags and, therefore, purchase them because they are a "green" product, Defendants are able to charge a premium for the Products. If consumers knew that the Products were not suitable for recycling, contaminated the recyclable waste stream, and were not recyclable, the product would not command a premium price based on that representation, fewer consumers would purchase them, and Plaintiff would not pay the premium attributable to that representation.

**(5) Plaintiff Hanscom's Experience**

40.    On or around September 15, 2020, Plaintiff Hanscom purchased a box of Hefty brand Recycling Bags for approximately $8.99 from the Safeway near her home. She read the claim "Recycling" bags on the Products and purchased them because she believed that the bags were suitable for disposing of her recyclables and that the bags themselves were recyclable. Shortly after purchasing and using the Products, she learned from her roommate that the Products were not recyclable and not suitable for disposing of recyclable waste and she immediately stopped using them. Had Plaintiff Hanscom known that the Recycling Bags were not suitable for recycling and not recyclable, she would not have purchased them, or at a

minimum, she would not have paid a premium for them.

41.     Plaintiff Hanscom continues to desire to purchase from Defendants trash bags that are suitable for recycling and are recyclable. However, Plaintiff is unable to determine if the Products are made from recyclable materials. Plaintiff understands that the design and composition of the Products may change over time. But as long as Defendants may use the phrase "Recycling" bags to describe products that are unsuitable for recycling and are not recyclable, then when presented with Defendants' packaging, Plaintiff continues to have no way of determining whether the representation "Recycling" bags is in fact true. Thus, Plaintiff is likely to be repeatedly presented with false or misleading information when shopping and she will be unable to make informed decisions about whether to purchase Defendants' Products and will be unable to evaluate the different prices between Defendants' Products and competitors' Products. Plaintiff is further likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their trash bags marketed as "Recycling" bags are suitable for recycling and are recyclable.

## CLASS ALLEGATIONS

42.     In addition to her individual claims, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43.     Plaintiff brings this class action lawsuit on behalf of a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, defined as follows:

> All persons who, between May 7, 2017 and the present, purchased Hefty brand Recycling Bags in California.

> Excluded from this Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased Hefty brand Recycling Bags for the purpose of resale.

44.     This action has been brought and may properly be maintained as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

45.     Numerosity: Plaintiff does not know the exact size of the Class, but she estimates

that it is composed of more than 5,000 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

46.     Common Questions Predominate: This action involves common questions of law and fact to the potential classes because each Class Member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class include, but are not limited to, the following:

a)      Whether the Products are "Recycling" bags suitable for disposing of recyclable waste;

b)      Whether the Products are recyclable;

c)      Whether Defendants unfairly, unlawfully and/or deceptively failed to inform class members that the Products are made from materials (i.e., LDPE aka No. 4 plastic) that are not recyclable;

d)      Whether Defendants' advertising and marketing regarding the Products sold to class members was likely to deceive class members or was unfair;

e)      Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

f)      The amount of the premium lost by class members as a result of such wrongdoing;

g)      Whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

h)      Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

47.     Typicality: Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of

conduct in which the Defendants engaged in violation of law as described herein. Plaintiff and Class Members purchased one or more boxes of Products. In addition, Defendants' conduct that gave rise to the claims of Plaintiff and Class Members (i.e., marketing, sales and advertising of the Products as suitable for recycling and/or recyclable) is the same for Plaintiff and all members of the Class. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

48.     Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class Members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class Members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the classes. By prevailing on her own claims, Plaintiff will establish Defendants liability to all Class Members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

49.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an

important public interest will be served by addressing the matter as a class action.

50.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

51.     Plaintiff does not plead, and hereby disclaims, any causes of action under any regulations promulgated by the FTC. Plaintiff relies on these regulations only to the extent such regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

### (Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)

### On Behalf of Herself and the Class

52.     Plaintiff realleges and incorporates the paragraphs of this Complaint as if set forth herein.

53.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

54.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

55.     Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

56.     The Products that Plaintiff (and others similarly situated class members) purchased from Defendants were and are "goods" within the meaning of California Civil Code § 1761(a).

57.     By engaging in the actions, representations and conduct set forth in this Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code § 1770(a)(2), Defendants' acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California

Civil Code § 1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendants' acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code § 1770(a)(9), Defendants have advertised goods or services with intent not to sell them as advertised. Specifically, in violation of §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9), Defendants' acts and practices led customers to falsely believe that the Products are (1) suitable for disposing of recyclable waste and (2) that they are recyclable, when they are not. In violation of section 1770(a)(8), Defendants falsely or deceptively market and advertise that, unlike products not specifically denominated as "Recycling" bags, the Products are suitable for recycling and are recyclable.

58.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

59.    CLRA § 1782 NOTICE. On May 11, 2021, Plaintiff provided Defendants with notice and demand that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. (*See* Exhibit B.) Defendants failed to respond to Plaintiff's letter or to take any of the requested actions within thirty days. Plaintiff seeks, pursuant to California Civil Code § 1780(a), on behalf of herself and those similarly situated members of the Class, actual damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices. With regard to the amount of damages and restitution, Plaintiff seeks to recover for herself and the Class a full refund of the price paid for the Products, or in the alternative, the price premium paid for the Products, i.e., difference between the price consumers paid for the Products and the

price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

60.     Plaintiff also requests that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFF'S SECOND CAUSE OF ACTION

**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**

**On Behalf of Herself and the Class**

61.     Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

62.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

63.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe the Products are (1) suitable for disposing of recyclable waste and (2) that they are recyclable when they are not. Defendants deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable.

64.     Plaintiff and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

65.     Defendants' acts and omissions are likely to deceive reasonable consumers and the general public.

66.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false

1  advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

2  Professions Code.

3       67.    The aforementioned practices, which Defendants have used, and continue to use,

4  to their significant financial gain, also constitute unlawful competition and provide an unlawful

5  advantage over Defendants' competitors as well as injury to the general public.

6       68.    As a direct and proximate result of such actions, Plaintiff and the other members

7  of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or

8  property as a result of such false, deceptive and misleading advertising in an amount which will

9  be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In

10  particular, Plaintiff, and those similarly situated, paid a price premium for the Products, i.e., the

11  difference between the price consumers paid for the Products and the price that they would have

12  paid but for Defendants' misrepresentation. This premium can be determined by using

13  econometric or statistical techniques such as hedonic regression or conjoint analysis.

14  Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon

15  proof that the sale of the Products was unlawful.

16       69.    Plaintiff seeks equitable relief, including restitution, with respect to her FAL

17  claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following

18  allegations in this paragraph only hypothetically and as an alternative to any contrary

19  allegations in her causes of action 1, 3 and 4, in the event that such causes of action will not

20  succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive

21  relief directly under causes of action 1, 3 and 4 and will lack an adequate remedy at law, if the

22  Court requires her to show classwide reliance and materiality beyond the objective reasonable

23  consumer standard applied under the FAL, because Plaintiff may not be able to establish each

24  Class member's individualized understanding of Defendant's misleading representations as

25  described in paragraphs 17-22 of this Complaint, but the FAL does not require individualize

26  proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC,*

27  287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is

28  available without individualized proof of deception, reliance, and injury.'").  In addition,

Plaintiff and the Class may be unable to obtain such relief under causes of action 3 and 4 and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the FAL imposes no such mens rea requirement and liability exists even if Defendant acted in good faith.

70.   Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

71.   Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and marketing is modified to disclose the omitted facts about the recyclability of the Products. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that the Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFF'S THIRD CAUSE OF ACTION

### (Fraud, Deceit and/or Misrepresentation)

### On Behalf of Herself and the Class

72.   Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

73.   Defendants fraudulently and deceptively led Plaintiff to believe that the Products were "Recycling" bags when the bags are not suitable for disposing of recyclable waste and are not recyclable. Defendants deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable.

74.   These misrepresentations and omissions were material at the time they were

made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the Products.

75.    Defendants made identical misrepresentations and omissions to members of the Class regarding the Products.

76.    Plaintiff and those similarly situated relied to their detriment on Defendants' fraudulent misrepresentations and omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

77.    Defendants had a duty to inform class members at the time of their purchases that the Products were not suitable for disposing of recyclable waste and are made from materials that are not recyclable. Defendants omitted to provide this information to class members. Class members relied to their detriment on Defendants' omissions. These omissions were material to the decisions of the class members to purchase the Products. In making these omissions, Defendants breached their duty to class members. Defendants also gained financially from, and as a result of, their breach.

78.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff, and those similarly situated, to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiff, and those similarly situated, to, without limitation, pay a premium to purchase the Products.

79.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff, and those similarly situated, have suffered damages. In particular, Plaintiff seeks to recover on behalf of herself and those similarly situated the price premium paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

80.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause

loss and harm to Plaintiff and those similarly situated.

## PLAINTIFF'S FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### On Behalf of Herself and the Class

81.     Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

82.     Defendants provided false and misleading information regarding the Products, representing that the wipes are "Recycling" bags when the Products are not suitable for recycling waste and are not recyclable. Defendants deceptively failed to inform Plaintiff, and those similarly situated, that the Products contaminate the recycling waste stream, decrease the recyclability of their otherwise recyclable items, and are not recyclable.

83.     These representations were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the Products.

84.     Defendants made identical misrepresentations and omissions to members of the Class regarding the Products.

85.     Defendants should have known their representations to be false and had no reasonable grounds for believing them to be true when they were made.

86.     By and through such negligent misrepresentations, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendants negligently induced Plaintiff, and those similarly situated to, without limitation, to purchase the Products.

87.     Plaintiff and those similarly situated relied to their detriment on Defendants' negligent misrepresentations. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

88.     Plaintiff and those similarly situated have suffered damages. In particular, Plaintiff seeks to recover on behalf of herself and those similarly situated the price premium

paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## PLAINTIFF'S FIFTH CAUSE OF ACTION

### (Unfair, Unlawful and Deceptive Trade Practices,

### Business and Professions Code § 17200, *et seq.*)

### On Behalf of Herself and the Class

89.   Plaintiff realleges and incorporates by reference the paragraphs of this Complaint as if set forth herein.

90.   Within four (4) years preceding the filing of this Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the conduct outlined in this Complaint.

91.   Defendants have engaged, and continue to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 et seq. (the "UCL"), by, without limitation:

   a. deceptively representing to Plaintiff, and those similarly situated, the Products are "Recycling" bags;

   b. failing to inform Plaintiff, and those similarly situated, that the Products are not suitable for disposing of recyclable waste because they are a contaminant and decrease the recyclability of otherwise recyclable items;

   c. failing to inform Plaintiff, and those similarly situated, that the Products are made with materials that are not recyclable;

   d. contravening and undermining state policies expressed in California Public Resource Code sections 42355 ( "[u]se of the term 'degradable,' 'biodegradable,' 'decomposable,' or other like terms on plastic products is inherently misleading unless the claim includes a thorough disclaimer providing necessary qualifying details, including, but not limited to, the environments and timeframes in which

the claimed action will take place") and 42355.5 (it is "the public policy of [California] that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products"); and

    a. contravening and undermining state and local policies in favor or recycling, recycling programs, and reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment.

92.    Defendants have engaged, and continue to engage, in unlawful practices as described herein, in violation of the UCL, by, without limitation, violating the following laws:

    a. the Federal Trade Commission Green Guides regulations, including, without limitation, 16 C.F.R. §§ 260.2, 260.12(a), and 260.12(b) as described herein;

    b. the Environmental Marketing Claims Act, including, without limitation, Cal. Bus. & Prof. Code § 17580(a) (Defendants have not maintained in written form in their records information and documentation supporting the validity of their representation) and §17580.5(a) (Defendants' representations and omissions complained of herein constitute untruthful, deceptive, or misleading environmental marketing claims) as described herein (collectively, "Greenwashing");

    c. the CLRA as described herein; and

    d. the FAL as described herein.

93.    Defendants have engaged, and continue to engage, in fraudulent practices as described herein, in violation of the UCL, by, without limitation:

    a. deceptively representing to Plaintiff, and those similarly situated, the Products are "Recycling" bags;

    b. failing to inform Plaintiff, and those similarly situated, that the Products are not suitable for disposing of recyclable waste because they are a contaminant and decrease the recyclability of otherwise recyclable items; and

c.  failing to inform Plaintiff, and those similarly situated, that the Products are made with materials that are not recyclable.

94.  Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) the Product

95.  Defendants' acts and omissions are likely to deceive reasonable consumers and the general public.

96.  Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

97.  The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

98.  As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

99.  Plaintiff seeks, on behalf of those similarly situated, equitable relief, including restitution for the premium and/or the full price that she and others paid to Defendants as result of Defendants' conduct.  Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to her "unfairness" claims in this UCL cause of action, because there is no

cause of action at law for "unfair" conduct.  Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to her "unlawfulness" claims in this UCL cause of action because the FTC Green Guides and Environmental Claims Marketing Act do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

100.   Plaintiff also seeks equitable relief, including restitution, with respect to her UCL unlawfulness claims for violations of the CLRA, FAL and her UCL deceptiveness claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her causes of action 1, 3 and 4, in the event that such causes of action will not succeed.  Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under causes of action 1, 3 and 4 and will lack an adequate remedy of law, if the Court requires her to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in paragraphs 17-22 of this Complaint, but the UCL does not require individualize proof of deception or injury by absent class me\mbers.  *See, e.g., Stearns v Ticketmaster,* 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under causes of action 3 and 4 and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite mens rea (intent, reckless, and/or negligence), because the UCL imposes no such mens rea requirement and liability exists even if Defendants acted in good faith.

101.   Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent and/or unlawful.

102.   Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and

marketing is modified to remove the implication that the Products are recyclable and disclose the omitted facts about the recyclability of the Products. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully request that the Court enter judgement against Defendants as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. An award of compensatory damages in an amount to be determined at trial;

D. An award of statutory damages in an amount to be determined at trial;

E. An award of punitive damages in an amount to be determined at trial;

F. An award of treble damages;

G. An award of restitution in an amount to be determined at trial;

H. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I. For reasonable attorney's fees and the costs of suit incurred; and

J. For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demand a trial by jury.

Dated: October 22, 2021                    **GUTRIDE SAFIER LLP**

_____
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT